139 So.2d 153 (1962)
The STATE BOARD OF CONTROL, a Public Corporation of the State of Florida, Appellant,
v.
CLUTTER CONSTRUCTION CORPORATION, a Florida Corporation, Appellee.
No. D-149.
District Court of Appeal of Florida. First District.
March 22, 1962.
*154 Richard W. Ervin, Atty. Gen., and Joseph C. Jacobs, Asst. Atty. Gen., for appellant.
Ausley, Ausley, McMullen, O'Bryan, Michaels & McGehee, Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant, The State Board of Control, has appealed from an adverse final decree permitting appellee, Clutter Construction Corporation, to withdraw an erroneous bid it had submitted for the construction of a public building, enjoining the Board from accepting the bid, and ordering return to Clutter of its $80,000 bid check provided Clutter complied with certain conditions set forth in the decree. The facts surrounding the transaction which form the basis of this suit are not in conflict. The principal contention of the Board is that the chancellor drew erroneous inferences from the facts, and in reaching his conclusion applied erroneous principles of law.
The Board publicly invited bids for the construction of a classroom building to be located at the University of South Florida in Tampa. The invitation required each bidder to file with his bid a good faith check in the sum of $80,000. Clutter is a general contractor engaged in the business of constructing buildings of the type called for in the Board's invitation. It prepared at its Miami office an estimate of the costs which would be incurred by it as prime contractor in performing that part of the contract which it would undertake to complete with its own organization. This estimate constituted less than twenty-five percent of the total contract price. Two employees of the company then traveled to Tampa, arriving there the day before the bids were to be received and opened. For a period of about five hours prior to filing its bid with the Board, Clutter's employees were busily engaged in receiving from local sub-contractors bids for performing the remaining portion of the total contract. The bids received from the several sub-contractors on each phase of the work were tabulated, and the lowest bids entered on a work sheet used by Clutter's agents in making up the total contract price. The low bids of the several sub-contractors were added on a computing machine which had been brought to Tampa for use in preparing the bid it intended to submit. In the process of adding the sub-contractors' bids, an error occurred which resulted in a total figure of $100,000 less than the true total of all bids received from the sub-contractors. The computing machine was of a type in which no paper tape was utilized, the total of any column of figures merely appearing in the appropriate place on the machine after the addition was completed. This machine had a history of malfunction, but had been checked and found to be in proper operating condition before being used for the purpose indicated above. A check of the machine made shortly thereafter revealed that it was not operating properly. The chancellor found from the evidence that the error which resulted in Clutter's bid being $100,000 less than the *155 true total resulted either from a malfunction of the machine itself, or from an error by Clutter's employee in manipulating it during the process of adding the sub-contractors' bids and arriving at the total which was utilized in making up its total bid.
After completing its bid form, the base contract price for which Clutter proposed to perform the contract was $1,367,000, a sum $100,000 less than the total amount which it intended to bid. In this condition Clutter's proposal was promptly transmitted to the Board's office where it was filed just prior to the opening of bids for the contract in question. When Clutter's bid, together with the bids submitted by the other contractors, was opened and the results announced, the contract price contained in Clutter's bid was $182,000 less than the next lowest bid. Clutter's employees who were then present immediately apprehended that its bid was erroneous. Clutter promptly communicated with the Board requesting time to check the computations set forth in its bid for possible personnel or machine error, and the next day discussed with the Board's architect the desirability of meeting for the purpose of discussing this situation. Clutter's bid was not immediately accepted for the reason that the next meeting of the Board was not scheduled to take place until about three weeks later. After discovering the error which occurred in computing the total amount of its bid, Clutter notified the Board and requested permission to withdraw its bid and have returned to it its $80,000 bid check. Upon advice of counsel the Board refused to comply with Clutter's request, whereupon this suit was instituted. Upon consideration of the evidence adduced before him, the chancellor rendered a decree and supporting memorandum opinion from which this appeal is taken.
In his opinion and decree the chancellor found the facts to be substantially as set forth above. In addition, it was found that this suit was instituted by Clutter before its bid was formally accepted by the Board. It was further found that the error made by Clutter in the computation of its bid was an honest mistake, and although it resulted from a negligent act, such act did not amount to gross negligence. The problem confronting the chancellor, as recited in his opinion, was a duty to relieve against an honest mistake of one party to avoid an unjust enrichment to another, but in so doing not to act unwisely in the preservation of the principles basic in competitive bidding, even though the Board in this case was not bound by any competitive bidding statute, nor was it compelled to accept the lowest competitive bid in awarding contracts such as the one here involved. The chancellor held that although one who files a sealed bid with a public body which has called for bids for public construction, and has deposited a check or bond as security for the performance of his bid if it is accepted, has no legal right to withdraw his bid before it is formally accepted or rejected, such bidder may seek relief in equity upon the following conditions: (a) the bidder acted in good faith in submitting the bid; (b) in preparing the bid there was an error of such magnitude that enforcement of the bid would work severe hardship upon the bidder; (c) the error was not a result of gross negligence or wilful inattention; (d) the error was discovered and communicated to the Board before the bid was accepted. The chancellor found that upon each of these facts being established by clear and convincing proof, a court of equity may authorize rescission of the bid subject, of course, to the rule that he who seeks equity must do equity. It was the chancellor's conclusion that the proof submitted by Clutter satisfied the several conditions set forth above thereby entitling it to equitable relief. He further found that the doing of equity by Clutter in this case required reimbursement to the State for such loss as it may have sustained by reason of the error. In conclusion it was decreed that Clutter should be permitted to withdraw its bid and to receive the $80,000 check deposited therewith upon condition that it *156 pay the Board a sum equivalent to six per cent per annum on $1,467,000 (the contract price which Clutter intended to bid) for a period of forty-five days, as reimbursement for the loss sustained by the Board occasioned by delays resulting from the withdrawal of such bid; and upon the further condition that if all bids theretofore received by the Board were rejected and new bids called for, that Clutter will enter a bid of not more than its original intended price of $1,467,000. The decree held that the Board has the right, subject to statutory conditions precedent as to the availability of funds, to either accept the next lowest bid; to reject all bids and readvertise; or to negotiate a contract if such is deemed advisable. The decree enjoined the Board from accepting Clutter's erroneous bid and it was directed to return to Clutter its bid check of $80,000 upon further order of court, after it has been determined that the conditions specified in the decree have been met.
The record reveals that subsequent to the rendition of the decree appealed the Board readvertised for bids on the building in question. In response to this invitation Clutter submitted a new bid in which it agreed to perform the contract at a base price within the total it intended to bid in the first instance. Clutter's was the lowest of several bids filed with the Board in response to its second invitation. The contract was awarded to Clutter by the Board, and formal contract documents have been executed.
In cases seeking relief from competitive bids submitted for public contracts, no rule should be established which will permit the withdrawal of such bids under circumstances which would be profitable to the bidder, or which would permit any collusion or connivance among bidders to the detriment of the public. Conversely, where a bidder is able to establish by clear and convincing evidence that he has made an honest mistake not due to gross or wilful negligence, and is willing and able to do that which is necessary to protect and preserve the public interest, common honesty as well as principles of equity would dictate that he be granted some form of relief, particularly when the potential loss resulting from the mistake is so substantial as would work an unjust hardship if relief were denied.
Cases involving situations identical with or similar to that presented by this record are legion. The conclusions reached by the courts are usually influenced by the facts surrounding each particular transaction. The rule followed by the majority of the courts in the United States is that in order to obtain equitable relief against unilateral mistake, the mistake must be remedial. In order to establish that the mistake is one for which equitable relief may be granted, it must be established that it is one of such consequence that enforcement would be unconscionable; it must relate to the substance of the consideration, that is, a material feature; the mistake occurred regardless of the exercise of ordinary care; and it must be possible under the circumstances to place the other party in status quo. The term "negligence" or its equivalent, in this connection, generally means ordinary negligence, which will not necessarily bar granting equitable relief. Otherwise qualified, it generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid so as to amount to gross negligence or wilful negligence, when it takes on a sinister meaning and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remedial in equity. It is thus distinguished from a clerical or inadvertent error in handling items of a bid, either through setting them down or in transcription.[1] If the mistake is found to be remedial, but occurs in connection with competitive bidding on public works, other factors enter into the consideration of whether equitable relief should be granted. It should *157 be further established by clear and convincing evidence that the bidder acted in good faith; the error when discovered was promptly communicated to the public body, and the offending bidder is able and willing to do equity by complying with such reasonable requirements as may be deemed necessary to protect and preserve the interest of the public body to whom the bid was offered. Whether the mistake was discovered and request to withdraw the bid was made before or after the contract was consummated are important factors bearing upon entitlement to relief.[2]
In the case we now review the chancellor found that all of the foregoing elements necessary to entitle Clutter to equitable relief had been established by clear and convincing evidence. It was on the basis of these findings that the decree was rendered. Subsequent to the decree Clutter complied with the requirements imposed by the chancellor in order to do just and complete equity as a condition precedent to the relief granted.
Appellant relies for reversal upon the decision rendered by the Supreme Court in Graham v. Clyde.[3] In the Graham case relief was denied a bidder who sought to withdraw his bid on a public contract because of a unilateral mistake. The facts in Graham are clearly distinguishable from the facts present in this case, and accordingly called for the application of a different rule of law. In Graham the mistake which formed the basis for the equitable relief prayed for in the complaint was committed by the complaining party. This factor evidently had important bearing on the court's decision, for it is recited in the opinion: "In some of the cited cases the error was made by a clerk or some one in the employ of the complaining party. In the case at bar the error was made by appellee. * * * The error, in other words, was due to some dereliction on the part of the appellee, rather than on some one employed by him. * * * After all, the most that can be said is that appellee is seeking relief from a clerical error that he alone was responsible for." In the case now under consideration the mistake against which relief is sought was occasioned either by the malfunctioning of a computing machine, or by an error in manipulation committed by an employee of Clutter. Furthermore, in Graham the mistake was not called to the attention of the public body until after the award was made and the contract agreed upon. In Graham the Supreme Court said: "After the bid is accepted, the bidder is bound by his error and is expected to bear the consequences of it." In the case now under consideration Clutter called his mistake to the Board's attention immediately after it was discovered, and long prior to the time the bid was purportedly accepted by the Board. Finally, in Graham it was held that: "By the rule generally approved equity will not relieve against the mistake of one guilty of culpable negligence, neither will it relieve against a mistake [which] could have been avoided by caution." The evidence in the case now reviewed clearly reveals that Clutter was not guilty of culpable negligence, and that under the pressing circumstances which prevailed at the time the bid was made up, the pertinent figures tabulated and total contract price computed, ordinary caution was exercised by Clutter's employees. These are the facts which were found by the chancellor, and the conclusion he reached accords with logic and reason.
In Graham the error against which equitable relief was denied resulted from simple negligence in the manipulation of an adding machine. Appellant has isolated this fact from the remaining facts revealed by the evidence, and interprets the decision in Graham to stand for the proposition that equity will not relieve against an error which results from an act of simple negligence. *158 It is axiomatic that every error committed in tabulating figures and computing a bid results from an act of negligence, whether such negligence may be characterized as simple, wilful, gross or culpable. If appellant's interpretation of the decision in Graham is correct, then a court of equity is powerless to relieve against any error occurring in connection with the preparation of a competitive bid. We cannot accept appellant's interpretation of the Graham decision, for to do so would not only be contrary to the basic principles of equity, but would likewise be contrary to decisions rendered by the courts in a great majority of other jurisdictions in this country.
In considering a case somewhat factually similar to the one now under consideration, this court stated by way of dictum in the Hotel China case[4] as follows:
"It should be borne clearly in mind that the foregoing rule applies only to the right of a bidder under the competitive bidding statute to withdraw his bid after all bids have been opened and the results announced. It has no bearing whatever upon the right of a bidder to seek relief in a court of equity against the consequences of an honest unilateral mistake made in the preparation of his bid filed under the competitive bidding statute. It has been generally held that equity will relieve against such a mistake if it is material to the transaction and goes to the substance of the contract, and its commission is not occasioned by a want of due care or diligence or the result of neglect, and the public body is fully informed of the mistake promptly upon its discovery. Under such circumstances it has been held that it would be inequitable to require a bidder to make good his offer, and equity has afforded relief not only against the requirement that he perform the contract in accordance with his bid, but also against forfeiture of the good faith check deposited with the bid as well."
The decree of the chancellor in this case is therefore not considered to be in conflict with Graham, and is harmonious with the expressions of this court in Hotel China.
The tenor of appellant's argument emphasizes a sincere apprehension that if the decree appealed is permitted to stand as a precedent, it will in large measure destroy the protection afforded public bodies by the competitive bidding statute of the state. Such postulate reflects little confidence in the ability of our courts to recognize gross or wilful negligence, bad faith or chicanery when it appears from the evidence adduced in any given case. We are unable to share the apprehension so strongly expressed by appellant in this regard.
Both appellant and appellee have assigned as error that part of the decree appealed which requires Clutter, in order to do equity, to pay the Board as reimbursement for the loss sustained by it occasioned by delays resulting from withdrawal of the bid a sum equivalent to six per cent per annum on the total contract price for a period of forty-five days. By its answer to the complaint the Board claimed as liquidated damages resulting from Clutter's refusal to consummate a contract at the erroneous price stated in its original bid the $80,000 check deposited by Clutter at the time its bid was filed. The Board did not specify what damages, if any, it has suffered as a result of Clutter's actions, nor did it offer any proof at the trial as to actual damages, if any, it had suffered. It was Clutter's contention that since it had offered to do equity by submitting a new bid at its originally intended contract price, and to complete the building within the time originally specified, the Board would suffer no damages and therefore was entitled to *159 none. Clutter likewise offered no proof as to the amount of delay, if any, which would necessarily be incurred in delivering the completed building to the Board in the event bids were readvertised and a new contract awarded. We fail to find any basis in the evidence or in established principles of law which supports the formula adopted by the chancellor in arriving at the damages found to have been suffered by the Board, and to which it was entitled to reimbursement by Clutter. That part of the decree directing Clutter to pay the Board the amount of damages specified therein is accordingly reversed. The decree in all other respects is affirmed.
Affirmed in part and reversed in part.
CARROLL, DONALD K., C.J., and STURGIS, J., concur.
NOTES
[1] 59 A.L.R. 809.
[2] 43 Am.Jur.  Public Works and Contracts, 804, 805, §§ 62, 63; 52 A.L.R.2d 792-814.
[3] Graham v. Clyde, (Fla. 1952) 61 So.2d 656.
[4] Hotel China & Glassware Co. v. Board of Public Instructions, (Fla.App. 1961) 130 So.2d 78.