BLUE WATER EXCAVATING COMPANY, INC.,
*v.* STATE HIGHWAY COMMISSIONER.

1. COURTS—COURT OF CLAIMS—JURISDICTION.

The court of claims, under the provisions of the revised judicature
act, has power and jurisdiction to hear and determine all
claims and demands, liquidated and unliquidated, *ex contractu*
and *ex delicto*, against the State and any of its departments,
commissions, boards, institutions, arms or agencies (CLS 1961,
§ 600.6419).

2. SAME—COURT OF CLAIMS—DECLARATORY JUDGMENTS.

The court of claims, being a court of limited jurisdiction hearing
claims formerly heard by administrative boards and without
an "equity side," is not authorized to render declaratory judg-
ments (CLS 1961, § 600.6419).

3. SAME—COURT OF CLAIMS—EQUITY SIDE.

The court of claims is a statutory court of limited jurisdiction
to which has been assigned the hearing of claims formerly
heard by administrative boards and has no "equity side" (CLS
1961, § 600.6419).

4. SAME—MERGER OF LAW AND EQUITY DID NOT ENLARGE JURISDIC-
TION OF COURT OF CLAIMS.

The merger of law and equity in this State was not meant, and
should not be construed, to enlarge the jurisdiction of the
court of claims, a statutory court of limited jurisdiction
(Const 1963, art 6, § 5; CLS 1961, §§ 600.223, 600.6419).

5. SAME—COURT OF CLAIMS—JURISDICTION—EQUITABLE REMEDY—
REFORMATION OF CONTRACT.

Court of claims, as a statutory court of limited jurisdiction and
without an "equity side," *held*, without jurisdiction to enter-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 20 Am Jur 2d, Courts § 33.
[4–6] 27 Am Jur 2d, Equity § 4.
[7] 17 Am Jur 2d, Contracts § 146.
[8] 17 Am Jur 2d, Contracts §§ 143–145, 148.
[9, 10] 43 Am Jur, Public Works and Contracts § 11.
[11] 43 Am Jur, Public Works and Contracts § 76.
[12, 14] 45 Am Jur, Reformation of Instruments §§ 55, 56.
[13] 45 Am Jur, Reformation of Instruments § 112.
[15] 43 Am Jur, Public Works and Contracts § 109.
[16] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

tain plaintiff contractor's complaint which sought reformation of a contract, traditionally an equitable remedy (CLS 1961, § 600.6419).

6. SAME—MERGER OF LAW AND EQUITY—PROCEDURAL DISTINCTIONS—SUBSTANTIVE CHANGES.

The merger of law and equity in this State was meant to abolish, as far as possible, the procedural distinctions between law and equity, and no attempt has been made, pursuant to the merger, to alter the substantive differences between law and equity (Const 1963, art 6, § 5; CLS 1961, § 600.223; GCR 1963, 11.3, 12).

7. REFORMATION OF INSTRUMENTS—FRAUD—UNILATERAL MISTAKE—EXECUTORY CONTRACTS.

A unilateral mistake in an unambiguous contract, no longer wholly executory, and without breach thereof, cannot be a ground for a reformation of the contract in the absence of misrepresentation or fraud.

8. SAME—CONTRACT—MUTUAL MISTAKE.

A mistake must be made by both parties to a contract so that the intentions of neither are expressed in the contract to warrant reformation in a court of equity.

9. CONTRACTS—PUBLIC   CONTRACTS—LOWEST   BID—BARGAIN—MISTAKE.

State is entitled to the bargain obtained in accepting the lowest bid and is under no obligation to examine bids to ascertain error and to inform bidder thereof.

10. SAME—INTEREST OF STATE—OBLIGATION OF STATE.

The State's interest in letting contracts is to obtain and accept the lowest bid from a contractor financially responsible and otherwise competent and the State's obligation is to itself and the public interest to save money by getting low bids, and where the above conditions are met the immediate obligation is at an end.

11. SAME—PUBLIC CONTRACTS—CONTRACTOR'S PERIL.

Bidding and entering into public contracts is the peril of the contractor and not the public body that acts on the bid, otherwise all State contracts would have to be negotiated upwards in favor of contractors asserting mistake and claiming inequity.

᾽. REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE.

Reformation of a written instrument on the grounds of mistake must be established by a clear and convincing testimony of

mistake that is mutual and common to both parties to the instrument.

13. SAME—MISTAKE—BURDEN OF PROOF.
The burden of establishing mistake as a basis for reforming a written instrument is upon the party seeking the reformation.

14. SAME—PUBLIC POLICY—PUBLIC CONTRACTS—MISTAKE.
Ordinarily reformation of public contracts is denied, in keeping with considerations of public policy, to successful low bidders on unambiguous, written, competitive bidding contracts after performance has begun, where the mistake for which relief is sought is attributable solely to the plaintiff contractor.

15. SAME—CONSTITUTIONAL LAW—EXTRA COMPENSATION PROHIBITED.
Provision of constitution prohibiting grant of extra compensation to a contractor by State after a contract has been entered into would seem to prohibit reformation of a contract between plaintiff contractor and the defendant State highway department, where a mistake was made by plaintiff as to the price of corrugated pipe in its bid price on a highway construction job (Const 1963, art 11, § 3).

16. COSTS—PUBLIC QUESTION—REFORMATION OF INSTRUMENTS—MISTAKE ON CONTRACTS FOR CONSTRUCTION OF PUBLIC WORKS.
No costs are allowed on appeal in action filed in the court of claims to reform a highway construction contract on which plaintiff had been the low bidder.

Appeal from the Court of Claims; Peterson (William R.), J., presiding. Submitted Division 2 June 3, 1966, at Lansing. (Docket No. 603.) Decided September 13, 1966.

Complaint by Blue Water Excavating Company, Inc., a Michigan corporation, against the State of Michigan, Michigan State Highway Department, and John C. Mackie, State Highway Commissioner, for the reformation of a contract to build a portion of a highway. Defendants' motion to dismiss granted. Plaintiff appeals. Affirmed.

*Atkins & Drillock,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, for defendants.

Lesinski, C. J.   Plaintiff Blue Water Excavating Company appeals from the granting of defendant State of Michigan's motion for summary judgment by the court of claims for "failure of the complaint to set forth facts alleging liability on the part of the defendants."

The action arose from a contract in the amount of $2,041,310.99, awarded to plaintiff and K. G. Marks, Inc., by defendant as the successful joint bidders on a portion of the I-94 highway—a cost-sharing project of the Federal government and the defendants. The above total included a bid for 792 lineal feet of 84″ corrugated metal pipe, unit price $4.00 per foot.

On July 22, 1963, Russell Sheldon, president of the plaintiff company, informed Fred Tripp of the Michigan State highway department by letter that an error had been made in the bid proposal by transposition of a figure for the corrugated pipe from $40.00 per foot to $4.00 per foot—a misplaced decimal point.   This action stems from plaintiff's attempts to avoid alleged financial loss in the amount of $28,512.00 through a price adjustment in this amount.

Pursuant to advice given in a letter[1] to one of plaintiff's employees by Sanford A. Brown, State

---

[1]                             "STATE OF MICHIGAN
                                      Office of the
"Sanford A. Brown        STATE TREASURER
State Treasurer              Lansing 3, Michigan
                                                            February 26, 1964
"Mr. L. Comer Sweeney
239 Gratiot Blvd.
Marysville, Michigan

*"Dear Comer:*
    "The attorney general's department advises me that your best approach in presenting a claim to the State court of claims is to be

treasurer, plaintiff filed a complaint on May 13, 1964, against the State of Michigan, the highway commissioner, and the State highway department.

On May 28, 1964, defendants filed a motion to dismiss. After hearing arguments, the trial judge stated that it was his understanding that the court of claims was without jurisdiction to hear this type of claim.[2] However, he offered plaintiff's counsel time to file a brief. The latter had not been filed by February 16, 1965, at which time the trial judge entered the order dismissing the action from which this appeal is taken.

Plaintiff-appellant argues that the sole question on appeal is the jurisdiction of the court of claims. It is appellant's contention that the court of claims has jurisdiction to grant the relief sought, and that, therefore, the trial court erred in refusing to hear the case which should be returned for a hearing on the merits.

Although appellee states that the court of claims as a statutory tribunal of limited jurisdiction is without authority to reform the contract, it contends that the basis of the court's decision was not its lack of equity power, but rather that the order of the court was a summary judgment on the merits for "failure of the complaint to set forth facts alleg-

---

represented by an attorney, who would plead your case before the court of claims in the same manner that he would in any other court.

"If the attorney you select to represent you is not familiar with the procedure to be followed, Mr. Russell Searl, assistant attorney general, has volunteered to provide him with the necessary information on how to proceed. The general feeling in the attorney general's office was that this claim would have some chance of being approved.

"Sincerely,
/s/ SANDY
SAB:b                                    SANFORD A. BROWN
State Treasurer"

[2] Since the relief sought is in effect reformation, which sounds in equity, the court of claims, as a statutory court of limited jurisdiction cannot grant it. This argument is discussed *infra*.

ing liability on the part of the defendants." Appellee maintains that *no* court in Michigan can grant the relief sought by plaintiff, as, in the absence of misrepresentation or fraud, a unilateral mistake in an unambiguous contract, no longer wholly executory, and without breach thereof, cannot be a ground for the claim herein sought to be recovered.

Appellant's argument is predicated on the theory that the court of claims has jurisdiction to grant the relief sought under the revised judicature act, PA 1961, No 236, § 6419 (CLS 1961, § 600.6419, Stat Ann 1962 Rev § 27A.6419). The pertinent portion of the statute, subdivision (1)(a) which appellant cites as controlling on this point, reads as follows:

"(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State and any of its departments, commissions, boards, institutions, arms or agencies."

It is identical to subsection 1 of section 8 of the prior statute.[3] In *Taylor* v. *Auditor General* (1960), 360 Mich 146, the Supreme Court analyzed the jurisdiction of the court of claims and concluded that this language did not give the court of claims the power to render declaratory judgments. At page 151 the Court said:

"The court of claims has no 'equity side' as that term is employed in respect of the jurisdiction of Michigan courts, it being, as we have pointed out, a legislative court of limited jurisdiction to which has been assigned the hearing of claims formerly heard by administrative boards."

Although there has been a merger of law and equity in the State of Michigan,[4] this merger was not

---

[3] CL 1948, § 691.108(1) (Stat Ann 1959 Cum Supp § 27.3548[8] (1)).

[4] "The distinctions between law and equity proceedings shall, as far as practicable, be abolished." Const 1963, art 6, § 5.

meant, and should not be construed, to enlarge the jurisdiction of a statutory court of limited jurisdiction.[5] Thus, the reasoning of *Taylor, supra,* is applicable to the case at bar wherein appellant seeks relief, the effect of which would be reformation, traditionally an equitable remedy, and precludes the granting thereof.

In addition, it is the holding of this Court that the relief sought is not available to the plaintiff under the facts presented in either law or equity, even in a court which would have the authority to grant relief as a court of general jurisdiction.

Although a fact situation similar to that presented herein appears not to have come to the attention of the appellate courts of Michigan prior to this time, there are reported cases from both New York and California wherein these courts have had occasion to deal with the problem presented in analogous circumstances, and both courts have denied relief to the contractors.

In *Heating Maintenance Corp.* v. *City of New York* (Sup Ct Special Term 1954), 129 NY Supp 2d

---

"The Supreme Court has authority to promulgate and amend general rules governing practices and procedure in the Supreme Court and all other courts of record, including but not limited to authority: * * *

"(5) to abolish, as far as practicable, distinctions between law and equity." Revised judicature act, PA 1961, No 236, § 223 (CLS 1961, § 600.223, Stat Ann 1962 Rev § 27A.223).

"There shall be 1 form of action to be known as a 'Civil Action.' " GCR 1963, 12.

"Committee comment: It is the intention of this rule to abolish all distinctions insofar as practicable between law and equity."

[5] The committee comment under GCR 1963, 12, further states: "These rules are written to abolish, as far as possible, the *procedural* distinctions between law and equity. No attempt has been made to alter the substantive differences between law and equity." (Emphasis in original.)

"Rule 11   Scope of Rules. * * *

".3 Inherent Limitation on Applicability.   The general statements as to the applicability of these rules contained herein do not affect the inherent inapplicability of various rules to certain courts stemming from the constitutional or statutory limitations on their jurisdiction, or from the nature of the court itself." GCR 1963, 11.3.

466, the plaintiff sought reformation of a contract between it and the city of New York. Plaintiff, as successful low bidder on the contract, commenced work under same, and after several months' performance thereof brought to the attention of the city a mistake it (plaintiff) had made in the unit price of one of the six items bid upon. The alleged error was that one item which had been estimated at a unit price of $6.50 should have been estimated at $26.50, thereby causing a difference in total amount sought to be recovered of $32,600. The court pointed out at page 468 that:

"Unless the plaintiff may have the reformation of the contract sought in equity, the expressed written agreement of the parties would be binding upon them in law and plaintiff would be required to bear the loss occasioned by its own errors."

The court then cited, at page 470, authority for the well-known proposition that:

"In the absence of fraud, reformation of a contract is not warranted by the mistake of one party. To warrant reformation, mistake must be made by both parties so that the intentions of neither are expressed in it."

It is relevant to note that the events leading up to the bringing of the action evidence many similar elements to the case at bar, i.e., in both cases the plaintiffs were successful low bidders on a government contract; in both cases the error was not discovered until performance had begun; in both the error claimed was an arithmetic one in stating the unit price of one of several items; in both the amount of monetary relief sought was similar— $32,600 for the New York case as compared to $28,512 in the instant case; and further, in both cases there was no breach of  contract.

However, the similarity between the two cases does not end at this point. The New York court was also faced with the argument by plaintiff that the defendant knew the unit price of $6.50 "was inadequate and very much less than the reasonable market value of such work and concealed such knowledge from the plaintiff." Appellant's brief in the instant case contains a similar allegation.[6] The New York court said that these allegations "are insufficient as a matter of law to constitute fraud." *Heating Maintenance Corp., supra,* at p 470. The court followed this with language that eloquently expresses the rationale of the holding:

"The defendant was not required to act for the protection of the plaintiff's interest. The city's interest was conflicting and the parties were bargaining for a price. It is the plaintiff contractor which submits the bid, wins and signs the contract at the amount given therein for the work to be done, which risks any resultant loss. The city is entitled to the bargain obtained in accepting the lowest bid. It is under no obligation to examine the bids to ascertain errors and to inform bidders thereof. * * * The city's interest is to obtain and accept the lowest bid from a contractor financially responsible and otherwise competent. The city's obligation is to itself and the public interest to save money by getting low bids, and where the above conditions are met the immediate obligation is at an end." pp 470, 471.

The New York court answered plaintiff's argument that the city, "while not guilty of fraud in the usual connotation of that term, was shown to be guilty of inequitable conduct" (page 471) with the

---

[6] "The State of Michigan employees who go over these bids have just as much knowledge of the price of this pipe as the contractor." Brief for appellant, p 7.

following language, which stated both the law and the reasoning behind it:

"The answer is that in accepting bids and entering into contracts thereon it is the contractor and not the city that acts on the bid at its peril. *If that were not so all city contracts would have to be renegotiated upwards in favor of contractors asserting mistake and claiming inequity.*" (Emphasis supplied.)

Across the country the California district court of appeals, when faced with an appeal by the defendant from a judgment granting reformation of a school construction building contract, reversed the trial court, holding that where the school board complied with the bidding statute and awarded the contract to the lowest bidder, the board could not enter into a new contract with the contractor for the same work at an increased price. *Paterson* v. *Board of Trustees* (1958), 157 Cal App 2d 811 (321 P2d 825). The portion of the fact situation which has particular relevance to the case at bar is that in the California case the defendant board of trustees suspected an error when the bids were opened. Plaintiff checked his figures and found none. Both parties continued to suspect an error; however, the contract was signed at the bid price. *Prior* to the commencement of work, the plaintiff found his error and advised his architect of it. The architect communicated this information to the board and reported to plaintiff:

"That defendants were favorably inclined toward correcting said contract price to relieve plaintiff from said mistake, so that plaintiff should not be damaged thereby' and the architect further advised plaintiff that he should proceed with performance and that, upon completion of the work, the defendants would see to it that the plaintiff suffered no loss as a result of his mistake. In reliance upon this

advice from the architect, plaintiff commenced and completed performance under the contract and was paid the contract price." pp 814, 815.

Thus, the case for relief in California where mistake was suspected by the defendant prior to execution of the contract, where the claimed mistake was found prior to commencement of work, and where the plaintiff actually relied on statements made by defendant, was substantially stronger than that presented by the instant case. In the case at bar, the defendants suspected no error prior to execution of the contract; the claimed mistake was not brought to defendants' attention until after performance had begun; and any reliance placed by the plaintiff on any of the ambiguous statements of defendants' employees or those made by officials of any other department had less justification than that presented to the California court. However, the California court refused to hold that the board was estopped from denying payment over and above the contract price under these circumstances. The court relied heavily on the public policy consideration involved. *Paterson, supra*. The court further noted that although the relief of rescission might have been available had the board received actual notice before acceptance of the bid, this was precluded by plaintiff's subsequent actions, and it denied plaintiff's claim for $10,800. At page 821 we find the following statement:

"Even assuming that plaintiff here may have rescinded his bid before acceptance, he waived that right by voluntarily entering into the contract and we can see no basis for transmuting a waived right into an obligation created by estoppel."

It is our belief that the reasoning and holdings as expounded by the courts in the above-cited cases are in keeping with prior Michigan case law developing

the theory of relief through reformation,[7] and dispositive of our decision in the case at bar.

In conclusion, we note the recent holding of the Federal court of appeals for the ninth circuit denying recovery of an alleged overcharge to the successful bidder on a Federal government contract in *United States* v. *Dwyer Lumber & Plywood Co.* (CA 9, 1965), 353 F2d 351. In that case the government had changed its practice with respect to the amortization rate applicable during the course of the contract, and the court held that although:

"Unquestionably it would have been good practice for the Government to give notice of its change in practice. * * * It was not unreasonable to expect that a prudent and experienced logging company would check all calculations and cost factors before bidding." *United States* v. *Dwyer, supra,* at p 353.

The Court also rejected the contractor's theory that reformation was proper under the facts presented, where the government auctioneer had used the same figures for his calculations as those relied upon by contractor, holding that since the auctioneer's purpose in using said figures might well have been a shortcut method for ascertaining what was high bid, it was therefore "far too equivocal to give rise to any reasonable inference that he did not understand the terms of the contract he was dealing with or that he knew the bidders didn't understand it."

The effect of this decision is a reaffirmation of the rationale and its manifestation in holdings involving public contracts which, in keeping with considera-

[7] "In order to decree the reformation of a written instrument on the ground of mistake, that mistake must be mutual and common to both parties to the instrument. The burden of establishing such mistake is upon the party who seeks reformation. The evidence must be convincing and must clearly establish the right to reformation." *Stevenson* v. *Aalto* (1952), 333 Mich 582, 589, and cases cited therein.

tions of public policy, denies relief to successful low bidders on unambiguous, written, competitive bidding contracts after performance has begun, where the mistake for which relief is sought is attributable solely to the plaintiff contractor.[8]

Affirmed. No costs, a public question involved.

T. G. Kavanagh and McGregor, JJ. concurred.

---

[8] The language of article 11, section 3 of the Michigan Constitution would seem to prohibit the granting of the relief sought herein.

"Neither the legislature nor any political subdivision of this State shall grant or authorize extra compensation to any public officer, agent or contractor after the service has been rendered or the contract entered into." Const 1963, art 11, § 3.

Even if the rather tenuous argument were accepted that the relief sought herein is not "extra compensation" as contemplated by the Constitution, the section cited above is, at a minimum, expressive of the strong public policy of the State against the recovery here sought.