ARCON CONSTRUCTION COMPANY,
Plaintiff and Appellee,

v.

The STATE of South Dakota, Acting by and Through Its DEPARTMENT OF TRANSPORTATION and the Board of Transportation Consisting of Roger Bernard, Jim Rothstein, Jim Sharp, Bob Appelwick, Jim Doyle, Pat Beckman, Jerry Leidholdt, Jerry Shoener, Don Jacobsen and Gene Rowen, Defendant, Third-Party Plaintiff and Appellant,

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a Wisconsin Corporation, Third-Party Defendant and Appellee.

No. 13373.

Supreme Court of South Dakota.

Argued Oct. 22, 1981.

Decided Jan. 6, 1982.

Gary F. Colwill of Schmidt, Schroyer, Colwill & Zinter, Pierre, for plaintiff and appellee and third-party defendant and appellee.

Carl W. Quist, Asst. Atty. Gen., Pierre, for defendant and third-party plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

HENDERSON, Justice.

### ACTION

A declaratory judgment was brought by Arcon Construction Company (Arcon) against the State of South Dakota through its Department of Transportation and Transportation Commission (Commission) to relieve Arcon from a bid it had submitted on a public construction work project and to obtain discharge of its bid bond. The Commission subsequently filed a third-party complaint against Arcon's surety, Employers Mutual Liability Company of Wisconsin. The trial court ruled that Arcon is entitled to cancellation of its bid and have its bid bond refunded. We affirm.

### FACTS

This case stems from bids received for the construction of a state highway project in Yankton County. In conjunction with this project, the Commission provided all prospective bidders with a specific bid proposal form. This bid form contained ninety-seven line items which bidders were required to submit unit prices on. In addition, all prospective bidders received a memo from the Commission prior to bidding informing them that all bids must include a four percent gross receipts tax. No specific line item for this tax, however, was provided for on the aforementioned bid form.

Elwood N. Olsen and John T. Laingen, both engineers for Arcon, were in Pierre, South Dakota, the night of June 25, 1979, for the purpose of computing costs for the Yankton County project. The bids were to be submitted on June 26, 1979. Standard procedure in making this type of bid necessitates last-minute computations so as to reflect the most current price information. Olsen and Laingen computed the bid price by filling in a "spread sheet," which consists of a gridded chart listing all the specific items that the Commission has assigned as bid items.

Since there was no bid item on the Commission's bid form to slot the figure representing the four percent gross receipts tax, Olsen and Laingen intended to slot the tax amount under the bid item referred to as "mobilization." Mobilization is a flexible item in the bid form which is used to reflect last minute changes.

On the spread sheet, the total amount of Arcon's bid, except for mobilization, was $4,463,811.20. Also on the spread sheet, $178,552.45 was listed as the amount for the four percent gross receipts tax on the entire bid, excepting mobilization. Initially, the mobilization figure was $245,000.00, but was subsequently adjusted to $224,200.00. To this figure was added $8,968.00, (which was the four percent gross receipts tax on $224,200.00) to total $233,000.00 (rounded off). This figure of $233,000.00 was then entered as the mobilization figure on the bid form provided by the Commission. Arcon's bid to the Commission totalled $4,875,303.65; this amount reflected inclusion of the $178,552.45 figure of the gross receipts tax. Arcon was also required to submit a bid bond of $243,768.18, which was five percent of the total bid. When the Commission added up all the individual bid items, however, the total was less than Ar-

con's aggregate bid. This discrepancy was due to Arcon's failure to list the $178,552.45 tax as an individual bid item. The Commission's addition of the individual bid items totalled $4,696,811.20 for Arcon's entire bid and Arcon, being the low bidder, was awarded the contract at this price.

Olsen and Laingen left Pierre for Minnesota immediately after the bid was submitted and, during the morning hours of June 27, 1979, discovered that the $178,552.45 mobilization figure was erroneously excluded from the mobilization bid item on the Commission's bid form. Upon discovering this error, Olsen immediately telephoned Maynard Sommer, a highway engineer for the Commission, and advised him of the error and asked that Arcon be relieved of the bid. At the time of this call, the Commission had not yet met or considered the bids on the Yankton County project. Olsen also sent a letter dated June 27, 1979, to the Commission advising it of the error and requesting that Arcon be relieved of its bid.

After being advised of Arcon's miscomputation, the Commission met on June 27, 1979, and awarded the contract to Arcon at $4,696,811.20; said amount being approximately $178,552.45 below the bid Arcon intended to submit. Arcon refused to sign the contract at the figure reached by the Commission and, consequently, initiated this declaratory judgment action.

## ISSUES

### I.

Did the trial court err by ruling that Arcon was entitled to have its bid lawfully cancelled and its bid bond refunded? We hold that it did not.

### II.

Did the trial court erroneously deny the Commission's motion to disqualify Attorney Gary Colwill from representing both Arcon and its surety, third-party defendant Employers Mutual Liability Company of Wisconsin? We hold that it did not.

## DECISION

### I.

With respect to declaratory orders, judgments and decrees, an appellant bears the burden of showing that the findings of the trial court are clearly erroneous. SDCL 21–24–13; SDCL 15–6–52(a); *Rapid City Area School District No. 51–4 v. Black Hills and Western Tours, Inc.*, 303 N.W.2d 811 (S.D.1981). From a review of the record, we hold that the Commission did not meet this burden.

Courts will grant equitable relief to a bidder on a public contract where the bidder has made a material mistake of fact in the submitted bid and, upon discovery of that mistake, acts promptly in informing the appropriate public authorities of the mistake and of its intention to withdraw. *State Highway Commission v. State Construction Company*, 203 Or. 414, 280 P.2d 370 (1955); 64 Am.Jur.2d, Public Works and Contracts, § 84 (1972).

To grant equitable relief to a bidder, however, certain essential conditions must be first established: the mistake must be of such consequence that enforcement would be unconscionable; the mistake must relate to the substance of the consideration, that is, a material feature; the mistake must have occurred regardless of the exercise of ordinary care; and, upon relief, it must be possible to place the other party in status quo. *State Board of Control v. Clutter Construction Corporation*, 139 So.2d 153 (Fla.App.1962); 52 A.L.R.2d 792 (1957). *See* SDCL 21–12–1; SDCL 53–11–2; SDCL 21–12–2; SDCL 21–12–3. Relief can be granted if these conditions are established by clear and convincing evidence. *State Board of Control v. Clutter Construction Corporation*, supra.

Citing specification 3.1 of the South Dakota Specifications for Roads and Bridges, 1977 Edition, which were incorporated into the proposed contract for this particular project, the Commission contends that Arcon should be held to its bid due to the nature of the error involved. We do

not agree. Specification 3.1 provides in pertinent part:

The right is reserved to reject any or all proposals, to waive technicalities, to advertise for new proposals, if in the judgment of the board, the best interest of the Department will be promoted thereby.

We do not believe that the mistake herein involved was merely "technical" in nature. Although the amount of the error, $178,552.45, is significantly less than the total amount of the bid (approximately 4.7 million dollars), this disparity does not persuade us that the mistake was not material; hence, the "right of waiver" provision in specification 3.1 cannot be invoked by the Commission. Further, the degree of the mistake, being approximately four percent of the total bid, relates directly to the substance of the consideration.

The mistake here appears to have been made in good faith. It may be characterized as a simple clerical error. We appreciate that any mistake indicates some degree of negligence. Absent gross negligence, however, equitable relief will not be denied. *State Board of Control v. Clutter Construction Corporation*, supra. In light of the fact that the Commission knew of the mistake prior to awarding the contract, to allow it to hold Arcon to its bid would be unconscionable. *See M.F. Kemper Construction Company v. City of Los Angeles*, 37 Cal.2d 696, 235 P.2d 7 (1951). Moreover, the Commission has suffered no actual damage by the withdrawal of Arcon's bid, since it has only lost what it sought to gain by taking advantage of the mistake. As the trial court stated in its findings: "Equitable considerations should not allow the recovery of the loss of bargain in this situation."

Also contended by the Commission, however, is that Arcon forfeited its bid bond under the requirements found in the following specifications of the proposed contract:

2.10 WITHDRAWAL OR REVISION OF PROPOSALS—A bidder may withdraw or revise a proposal after it has been deposited with the Department, provided the request for such withdrawal or revision is received by the Department, in writing or by telegram, before the time set for opening proposals.

3.7 FAILURE TO EXECUTE CONTRACT—Failure to execute the contract and file acceptable bonds within twenty (20) days after the bidder has received notice that the contract has been awarded shall be just cause for the cancellation of the award and the forfeiture of the proposal guaranty which shall become the property of the Department, not as a penalty, but in liquidation of damages sustained. Award may then be made to the next lowest responsible bidder, or the work may be readvertised and constructed under contract or otherwise, as the Board may decide.

Provisions of a like nature have been considered in similar cases and have generally been held as ineffective when equitable considerations dictate otherwise. *President and Council of Mount St. Mary's College v. Aetna Casualty & Surety Company*, 233 F.Supp. 787 (D.Md.1964); *Peerless Casualty Company v. Housing Authority of Hazelhurst*, 228 F.2d 376 (5th Cir. 1955); *M.F. Kemper Construction Company v. City of Los Angeles*, supra; *State of Connecticut v. F.H. McGraw & Company*, 41 F.Supp. 369 (D.Conn.1941); *see* 52 A.L.R.2d 792 (1957). Under the facts of the present case, we adhere to the rationale of these authorities.

We conclude that the trial court was not clearly erroneous when it declared that Arcon was entitled to have its bid lawfully cancelled and its bid bond refunded.

II.

Subsequent to a hearing and a submission of briefs by the parties, the trial court denied the Commission's motion to disqualify Arcon's attorney from also representing third-party defendant Employers Mutual Liability Company of Wisconsin, surety for Arcon. This denial, alleges the Commission, was erroneous.

The facts indicate that the surety relied upon the same legal arguments as did Arcon. Nevertheless, the Commission main-

tains that this dual representation constituted a conflict of interest for the attorney representing the parties. Disciplinary Rule 5–105 of the Code of Professional Responsibility, appendix to SDCL ch. 16–18, provides in pertinent part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 510–3(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Thus, when an attorney represents more than one party to a lawsuit and obtains their consent after fully disclosing the applicable facts and consequences concerning the dual or multiple representation, no professional misconduct is involved. *See Tabour Realty Company v. Gannon*, 49 S.D. 268, 207 N.W. 94 (1926); *In re Morrison*, 43 S.D. 185, 178 N.W. 732 (1920); 7A C.J.S. Attorney & Client § 154 (1980). The court may and should disqualify an attorney, however, from appearing in a case, or permit him to voluntarily withdraw, if he attempts to simultaneously represent clients with adverse interests. 31 A.L.R.3d 715 (1970). Here, Arcon and its surety were adequately informed of the dual representation. There were no conflicting or hostile interests. Indeed, the surety investigated this cause of action to insure that its interests did not conflict with those of Arcon. The order of the trial court denying the motion to disqualify counsel was not erroneous.

The judgment of the trial court is affirmed.

All the Justices concur.