518 So.2d 1326 (1987)
DEPARTMENT OF TRANSPORTATION, an agency of the State of Florida, Appellant,
v.
RONLEE, INC., a Florida Corp., Appellee.
No. 86-2154.
District Court of Appeal of Florida, Third District.
December 22, 1987.
Rehearing Denied February 10, 1988.
A.J. Spalla, Gen. Counsel, and Robert I. Scanlan, Deputy Counsel, and Maxine F. Ferguson and James W. Anderson, Tallahassee, for appellant.
Sparber, Shevin, Shapo, Heilbronner & Book and Glenn J. Waldman and Jeffrey M. Weissman, for appellee.
Before SCHWARTZ, C.J., and HENDRY and FERGUSON, JJ.
PER CURIAM.
The threshold question presented is whether the successful bidder for a government road construction contract is entitled to reformation of the contract to increase the price by $317,463 based on a unilateral mistake, after the competing bids are all opened, where the new contract price would still be lower than the second lowest bid.
The Department of Transportation (DOT) solicited bids pursuant to section 337.11, *1327 Florida Statutes (1985), for the construction of an interchange at the intersection of State Road 826 and Interstate 75 in Hialeah. On December 7, 1983, DOT declared Ronlee, Inc. the apparent low bidder with a bid of $15,799,197.90. The second lowest bid exceeded Ronlee's bid by $610,148.[1]
On February 13, 1984, DOT entered into a contract with Ronlee to construct the project based on the bid, and on March 7, 1984, gave Ronlee notice to proceed with the project. Five days later, Ronlee advised DOT that the bid contained a "stupid mistake" in the amount of $317,463. The letter alleged an error with respect to the unit bid price for concrete culverts which occurred when an employee of Ronlee erroneously transcribed a phone quote of $525 for each culvert as $5.25 each. By letter dated March 21, 1984, DOT informed Ronlee that it was aware of the apparently unbalanced unit price for the concrete culverts, but that it was unable, as a matter of state policy, to permit an increase in the contract price.
Nevertheless, on March 22, 1984, having made no effort to withdraw the bid, Ronlee began construction of the project. Twentyone months later, with the project seventyfive percent completed, Ronlee filed suit against DOT seeking reformation of the contract. Both sides moved for summary judgment, agreeing that the material facts were not in dispute. Ronlee's motion for summary judgment was granted, the trial court holding that DOT's silence about Ronlee's apparent error in price calculations constituted inequitable conduct and that reformation of the contract would not undermine the competitive bidding process. In addition to the $317,463, the court awarded Ronlee $60,000 in prejudgment interest and costs. We reverse.
Where a contractor makes a unilateral error in formulating his bid for a public contract, the remedy is rescission of the contract. Jones, The Law of Mistaken Bids, 48 U.Cin.L.Rev. 43, 49 (1979); Annotation, Right of Bidder for State or Municipal Contract to Rescind Bid on Ground that Bid was Based Upon His Own Mistake or that of His Employee, 2 A.L.R. 4th 991 (1980). Florida courts have permitted a contractor to withdraw a bid on a public contract, subject to certain equitable conditions. In State Board of Control v. Clutter Construction Corp., 139 So.2d 153 (Fla. 1st DCA), cert. denied, 146 So.2d 374 (Fla. 1962), a contractor was permitted to withdraw a bid on a showing of the following equitable factors: (1) the bidder acted in good faith in submitting the bid; (2) in preparing the bid there was an error of such magnitude that enforcement of the bid would work severe hardship upon the bidder; (3) the error was not a result of gross negligence or willful inattention; (4) the error was discovered and communicated to the public body, along with a request for permission to withdraw the bid, before acceptance.
No reported Florida decision has permitted reformation by belated request of a bid contract for a public project in order to make it profitable to the contractor.[2]Graham v. Clyde, 61 So.2d 656 (Fla. 1952), is the only case presented by the parties where reformation was even sought as relief for a mistaken bid. There a building contractor was low bidder on a proposal to construct a public school building and was *1328 awarded the contract. The following day he notified public officials that he had made a mistake of $5,000 in computing items in his bid and asked to be relieved of his obligation to perform according to the contract terms. He offered to perform the contract for $5,000 more, which was still less than the next low bidder. The circuit court did not grant a reformation but did rescind the contract and enjoined the school board from attempting to enforce it.
The Florida Supreme Court, citing a number of cases from other jurisdictions, reversed, holding that unilateral errors are not generally relieved and that there was no equitable basis for relief. In an opinion by Justice Terrell the court stated the reason for the firm rule:
If errors of this nature can be relieved in equity, our system of competitive bidding on such contracts would in effect be placed in jeopardy and there would be no stability whatever to it. It would encourage careless, slipshod bidding in some cases and would afford a pretext for the dishonest bidder to prey on the public... . After the bid is accepted, the bidder is bound by his error and is expected to bear the consequence of it.
61 So.2d at 658.
The prevailing view is that reformation is not the appropriate form of relief for unilateral mistakes in public contract bids where the bidder is negligent. Dale Ingram, Inc. v. United States, 475 F.2d 1177, 201 Ct.Cl. 56 (1973); Blue Water Excavating Co. v. State, 4 Mich. App. 266, 144 N.W.2d 630 (1966); Baltimore v. DeLuca-Davis Constr. Co., 210 Md. 518, 124 A.2d 557 (1956).[3] The reason for not permitting reformation of bid contracts for public projects based on unilateral mistake is the same in other jurisdictions  to prevent collusive schemes between bidders, or between bidders and awarding officials, or multiple claims from contractors asserting mistake and claiming inequity at taxpayers' expense. See Heating Maintenance Corp. v. City of New York, 129 N.Y.S.2d 466 (N.Y. Sup. Ct. 1954); Paterson v. Board of Trustees, 157 Cal. App.2d 811, 321 P.2d 825 (1958).
A written instrument may be reformed where it fails to express the intention of the parties as a result of mutual mistake, or unilateral mistake accompanied by inequitable conduct by the other party. Camichos v. Diana Stores Corp., 157 Fla. 349, 25 So.2d 864 (1946). Because the mistake in this instance was admittedly unilateral, in order to obtain reformation of the contract, Ronlee was obligated to show by clear and convincing evidence that DOT's conduct in not calling Ronlee's attention to a possible error in the bid tabulations was fraudulent or otherwise inequitable. Robinson v. Wright, 425 So.2d 589 (Fla. 3d DCA 1982). That burden was not carried. The Department's failure to call Ronlee's attention to the error in calculation was of no consequence since Ronlee discovered its own error shortly after the Department learned of the miscalculation.
Competitive bidding statutes are enacted to protect the public and should be construed *1329 to avoid circumvention. Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931); Miami Marinas Ass'n Inc. v. City of Miami, 408 So.2d 615 (Fla. 3d DCA 1981), rev. denied, 418 So.2d 1278 (Fla. 1982). A government unit is not required to act for the protection of a contractor's interest; it is entitled to the bargain obtained in accepting the lowest responsible bid and is under no obligation to examine bids to ascertain errors and to inform bidders accordingly. Blue Water Excavating Co. v. State, 144 N.W.2d at 634, (citing Heating Maintenance Corp. v. City of New York). Absent an obligation to do so, failure of the government in this case to call the bidder's attention to a relatively minor two percent error in its calculations, after the bids were opened, was not such fraud or imposition as would entitle the bidder to reformation of the contract.
Further, Ronlee forfeited any right it may have had to reformation or rescission. It had knowledge of its own mistake at least ten days before commencement of construction. Ronlee's conduct in performing according to the terms of the agreement for twenty-one months instead of seeking to withdraw the bid, after DOT had advised that it could not administratively correct the error, effected a waiver of rights. See Farnham v. Blount, 152 Fla. 208, 11 So.2d 785 (Fla. 1942) (any unreasonable or unnecessary delay by a party seeking to cancel an instrument based on fraud or other sufficient cause will be construed as a waiver or ratification); Thompson v. Gross, 353 So.2d 191 (Fla. 3d DCA 1977); Malt v. Deese, 399 So.2d 41 (Fla. 4th DCA 1981). See generally 9 Fla.Jur.2d Cancellation, Reformation and Rescission of Instruments, §§ 37, 38 (1979).
Reversed and remanded with instructions to enter judgment for the Department of Transportation.
HENDRY and FERGUSON, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
With respect, I must dissent. The majority does not say that the record shows and the trial judge found just the inequitable conduct by the DOT which, under principles it acknowledges, renders reformation an entirely appropriate remedy: although the DOT was aware of the mistake when the bids were opened and well before construction commenced, it deliberately failed to inform the contractor of this fact. The final judgment under review contains, among others, the following, essentially undisputed determinations:
(e) The Defendant acknowledged receipt of notice, prior to commencement of construction, of the existence of the error and further acknowledged that the Plaintiff's bid "error was unintentional" and "resulted from inexperienced personnel" generating a simple mathematical error by misplacing a decimal point and "not comprehending the reasonableness of the money figures being used." (Exhibit "D" to Plaintiff's Motion).
(f) Indeed, the Defendant even admitted that prior to the Plaintiff's March 12, 1984 notification to the Defendant, the Defendant had already been "aware of the apparent unbalanced unit price of the item of Class II Concrete Culverts" (Exhibits "D" and "C" to Plaintiff's Motion; Plaintiff's Motion at 5-6, 9). Exhibit "C", a December 19, 1983 computer print-out (entitled "summary of bids") produced by Defendant during discovery, demonstrates that the "apparent unbalanced unit price" with respect to the bids "opened at Tallahassee, Florida on December 7, 1983" was known to Defendant promptly upon examination of the bids.
3. The Court is therefore of the view that Plaintiff has proved inequitable conduct by the Defendant by clear and convincing proof. Clearly, the Defendant was aware, or certainly should have been aware, that the unit item bid price for 400-2-1 Class II Concrete Culverts was one hundred (100) times less than the nearest unit price for the same item. However, the Defendant chose wrongfully to remain silent as to the existence of this error and, further, refused to act *1330 equitably after the Plaintiff had discovered the error and promptly acted to notify the Defendant of the error.
On this basis, the trial court held:
4. While the Court is not unmindful of the fact that competitive bidding statutes should be construed to avoid circumvention, under the unique facts of the case sub judice, the integrity of the competitive bidding process will not be undermined with the granting of contract reformation. Where, as here, the differential between the mistaken bid and the second lowest bid exceeds the amount of the error sought to be reformed, no frustration or harm to beneficial purpose can fairly be demonstrated.
I entirely agree.
It is undisputed that, through a simple mistake in decimal point transcription, Ronlee was out and the DOT was in over $300,000 in material expenses. Short of reliance on the well-known playground maxim about keepers and weepers, there is no reason why the state should be entitled to retain this found money. Under ordinary reformation law, the combination of a unilateral mistake and inequitable conduct fully justifies that relief, Camichos v. Diana Stores Corp., 157 Fla. 349, 25 So.2d 864 (1946), and no bases exist or are advanced for the application of a different rule merely because a process of competitive bidding is involved. Since the correction of the mistake would still bring the appellee under the next highest bid, no administratively difficult process of rebidding would be required and none of the purported horribles  "collusive schemes between bidders, or between bidders and awarding officials, or multiple claims from contractors asserting mistake and claiming inequity at taxpayers' expense," supra at 1328  are even arguably implicated. See Dick Corp. v. Associated Elec. Coop., Inc., 475 F. Supp. 15 (W.D.Mo. 1979) (permitting unilateral bid mistake by increasing contract price to amount which left plaintiff as low bidder); Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498 (1967) (correcting bid mistake by reforming contract price); see also Chris Berg, Inc. v. United States, 426 F.2d 314, 192 Ct.Cl. 176 (1970); Bromley Contracting Co., Inc. v. United States, 596 F.2d 448, 219 Ct.Cl. 517 (1979). I would not refuse to reach a just result here because of the mechanical application of an unsupportable rule or out of a necessarily unjustified fear that someone may in the future misapply our holding in a materially different situation.
The very salutary Florida rule of unilateral mistake  which represents a minority view on the question, Maryland Casualty Co. v. Krasnek, 174 So.2d 541 (Fla. 1965)  is that the courts will relieve one of the consequences of such an error and the opposite party should be deprived of any consequent windfall whenever there is neither a detrimental reliance upon the mistake nor an inexcusable lack of due care which led to its commission. Krasnek, 174 So.2d at 543; Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Anderson, 445 So.2d 612, 613 (Fla. 3d DCA 1984), pet. for review denied, 453 So.2d 43 (Fla. 1984). Neither is present in this case. While the law of our state says otherwise, the majority has permitted DOT successfully to play "gotcha" with Ronlee's money.[1] The state, perhaps even more and certainly no less than a private party, should not be permitted to do so. See Fraga v. Department of Health and Rehabilitative Servs., 464 So.2d 144 (Fla. 3d DCA 1985), pet. for review denied, 475 So.2d 694 (Fla. 1985). I would affirm.
NOTES
[1] The four sealed bids received were:

 Ronlee, Inc. $15,799,197.90
 Triple R. Paving, Inc. $16,409,345.63
 Capeletti Bros., Inc. $18,996,533.56
 State Paving Corp. $19,186,879.40

[2] Appellee cites two cases, Hotel China & Glassware Co. v. Board of Public Instruction, 130 So.2d 78 (Fla. 1st DCA 1961), and Clutter, 139 So.2d 153, as "Florida decisions [which] reflect that reformation of a contract will be permitted where the appropriate set of facts are presented." [Appellee's brief, p. 12]. The argument is, at best, an unforgiveable misreading of the cases.

Hotel China & Glassware holds that one who files a bid pursuant to an invitation issued under the competitive bidding statutes of this state has no right as a matter of law to withdraw such bid after all bids have been opened and the results made known. The Clutter case set out equitable conditions which justified allowing a contractor to withdraw its bid.
[3] Appellee calls our attention to Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498 (1967), where a bid for a lease of realty to the government was required to be submitted on a complex form prepared by government contracting officers. Plaintiffs' agents had no experience in preparing lease estimates based on percentage increase or decrease in rentals depending on site acquisition costs. The error of the plaintiffs, inserting 8/10 of one percent and 7/10 of one percent where they intended to insert 7 percent and 8 percent respectively, was of such magnitude that contracting officers knew it was not the bidder's intent.

First, the court recognized a duty on the part of government contracting officers under the circumstances to call the bidder's attention to the manifest mistake. Reformation was then approved because the plaintiffs discovered their mistake too late for rescission as a feasible remedy. The instant case, however, is easily distinguishable because there was no disparity in expertise, or other special circumstances, which imposed a special duty or obligation on government contracting officers. Here, unlike in Chernick, the bidder was aware of its mistake soon after the bids were opened and before commencement of construction  while rescission was still a feasible remedy.
[1] Unlike the majority, I do not believe that Graham v. Clyde, 61 So.2d 656 (Fla. 1952), compels a different result. Not only does Graham involve rescission, rather than reformation, it was decided before and is entirely contrary to the philosophy of Maryland Casualty Co. v. Krasnek, 174 So.2d 541 (Fla. 1965). See Crosby v. Andrews, 61 Fla. 554, 55 So. 57 (1911), cited as supportive in Graham and as controlling and especially "noteworthy" in Krasnek.