[Civ. No. 22206. Second Dist., Div. Two. Feb. 24, 1958.]

ROBERT D. PATERSON, Respondent, v. THE BOARD OF TRUSTEES OF THE MONTECITO UNION SCHOOL DISTRICT et al., Appellants.

812

Vern B. Thomas, District Attorney (Santa Barbara), and John G. Barnes, Jr., Deputy District Attorney, for Appellants.

Edmund G. Brown, Attorney General, and Richard H. Perry, Deputy Attorney General, as Amici Curiae on behalf of Appellants.

Cornwall & Westwick and John A. Westwick for Respondent.

RICHARDS, J. pro tem.*—Plaintiff brought this action against defendant, The Board of Trustees of the Montecito Union School District (hereinafter referred to as "Board of Trustees") and the individual members thereof to reform

*Assigned by Chairman of Judicial Council.

a school building construction contract, after full performance by plaintiff and defendants, to recover for a deficiency in the bid and contract price resulting from plaintiff's clerical error in making his cost computations. Plaintiff had judgment and defendants appeal.

The facts are simple and without substantial conflict. The Board of Trustees employed Chester Carjola, a licensed architect, to prepare plans and specifications for a new school building at Montecito, California. Plaintiff, a licensed contractor, in response to an advertisement for bids on the building, prepared and submitted a total bid of $144,800. In computing his bid, plaintiff used a work sheet on which he entered the figure of $12,000 for the plumbing subcontract in one column, but upon extending this figure to the totals column he entered the figure of $1,200, which latter figure was used in computing his total bid, thus causing his bid to be $10,800 less than if he had extended the figure of $12,000 into the totals column. When the bids were opened before the Board of Trustees, plaintiff was the low bidder, the next higher bid being $158,370, the other bids ranging upward to $177,758. The discrepancy between the plaintiff's bid and the other bids led the plaintiff and the Board of Trustees to suspect at that time that the plaintiff had made some error. Plaintiff immediately checked his figures but found no error and the following morning advised the architect that no mistake had been found and that he, the plaintiff, was ready to sign the contract at the bid price, which he did on March 2, 1954, no error in his computations having been discovered at that time. When the contract was signed both the plaintiff and the Board of Trustees still suspected that there was some mistake in plaintiff's bid but neither knew what the mistake was or the amount thereof. Shortly thereafter and before commencement of the work, plaintiff discovered his mistake and immediately advised the architect that the mistake had been discovered, the amount of the mistake and how it had occurred. The architect advised plaintiff that the matter would be called to the attention of the Board of Trustees in an effort to obtain relief for plaintiff from his mistake. Plaintiff himself did not communicate with the Board of Trustees as to the discovery of his mistake or the amount thereof. A few days later and still prior to the commencement of the work, the architect advised plaintiff that the matter had been taken up with the Board of Trustees and, as found by the court, "that

defendants were favorably inclined toward correcting said contract price to relieve plaintiff from said mistake, so that plaintiff should not be damaged thereby'' and the architect further advised plaintiff that he should proceed with performance and that, upon completion of the work, the defendants would see to it that the plaintiff suffered no loss as a result of his mistake. In reliance upon this advice from the architect, plaintiff commenced and completed performance under the contract and was paid the contract price. The court found substantially in accordance with the foregoing statement of facts and additionally found that the architect ''was the agent of defendants in connection with the construction work . . . and in connection with the negotiation of the contract therefor'' and that the defendants desire ''if legally possible, to pay plaintiff the sum of $10,800,'' the difference between his actual and intended bid price. The court concluded that ''defendants are estopped to refuse payment to plaintiff of the sum of $10,800''; that plaintiff is entitled to judgment reforming the contract so as to increase the amount to cover the mistake of $10,800 and that the plaintiff is entitled to judgment against the defendants for $10,800 with interest and costs. Judgment was entered accordingly.

As principal grounds for reversal, defendants contend: (1) that the court erred in granting reformation of the building contract, and (2) that the court erred in concluding that the defendants were estopped from denying payment of $10,800 to the plaintiff.

█ In the absence of estoppel, it is manifest that the pleadings, the evidence and the findings will not support the conclusion and judgment for reformation of the contract between plaintiff and defendants. █ It is a presupposition to the granting of reformation that there was a valid agreement made between the parties which the instrument they executed failed to express correctly. █ In the case at bar there is neither allegation nor proof that either the plaintiff or the defendants knew, before or at the time the contract was executed, the amount of plaintiff's mistake or how it was made. Nor is it alleged or established that the defendants ever agreed to any price other than the price set forth in the contract. The most that was established was that the plaintiff and the defendants each suspected some mistake. Notwithstanding such suspicion, the only common intention between the parties at the time of contracting was that the plaintiff

agreed to perform the work and the defendants agreed to pay therefor the amount as set forth in the contract.

In *Lemoge Electric* v. *County of San Mateo,* 46 Cal.2d 659 [297 P.2d 638], it appears that the plaintiff submitted the low bid of $172,421 for electrical work to be done on a county hospital job. The cost of certain materials amounting to $10,452 was inadvertently listed by the plaintiff as $104.52. The mistake was discovered before the acceptance of the bid, but the county refused to permit an adjustment in the bid to compensate for the error. Instead of seeking rescission, the plaintiff entered into a contract at the terms specified in the bid and after performance of the contract sought reformation. ■ In affirming a judgment sustaining a general demurrer without leave to amend, the court said, beginning at page 663: "The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing. (*Bailard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10].)

■ In order for plaintiff to obtain this relief there must have been an understanding between the parties on all essential terms, otherwise there would be no standard to which the writing could be reformed. (*Bailard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10]; *McConnell* v. *Pickering Lbr. Corp.,* 217 F.2d 44, 48-49; see Williston on Contracts (rev. ed. 1937), § 1548, p. 4339; Rest., Contracts, § 504, com. b; 45 Am.Jur. 586-587, 609-610.) ■ Section 3399 of the Civil Code incorporates this principle by providing that, under specified conditions, a written contract which does not truly express 'the intention of the parties' may be revised so as to set forth 'that intention.' As pointed out in *Bailard* v. *Marden, supra,* this language refers *to a single intention which is entertained by both parties.* (36 Cal.2d at p. 708.)

■ "Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties. ■ Where the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved. (See e.g. *Mills* v. *Schulba,* 95 Cal.App.2d 559 [213 P.2d 408].)

■ When only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other, the contract may be reformed to express a single inten-

tion entertained by both parties. (*Stevens* v. *Holman,* 112 Cal. 345 [44 P. 670, 53 Am.St.Rep. 216] ; *Higgins* v. *Parsons,* 65 Cal. 280 [3 P. 881] ; *Eagle Indem. Co.* v. *Industrial Acc. Com.,* 92 Cal.App.2d 222 [206 P.2d 877] ; see *Hansen* v. *Western Loan & Bldg. Co.,* 46 Cal.App.2d 580 [116 P.2d 465].)

Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral. (*Bailard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10] ; *Burt* v. *Los Angeles Olive Growers Assn.,* 175 Cal. 668, 674-675 [166 P. 993] ; 5 Williston on Contracts (rev. ed., 1937), § 1549, pp. 4344, 4345; Rest., Contracts, § 504, com. c ; 45 Am.Jur. 587-588.) As we have seen it is not alleged that defendant ever agreed to pay plaintiff an amount greater than the sum designated in the bid, and the complaint therefore does not state facts entitling plaintiff to reformation.'' In the case just cited although both parties knew the amount of the error and thus the amount of the bid, had an error not been made, yet reformation was denied for the reason that there was no agreement to pay the plaintiff therein any amount other than the bid price. In the case before us, not only was there no agreement between the parties to pay plaintiff any amount other than his bid price, but neither party had in mind any price other than the amount of plaintiff's bid when the contract was executed. There was no mutual understanding of a definite price which had been incorrectly set forth in the contract. Hence, unless defendants are estopped to deny reformation of the contract, it is clear that the plaintiff is not entitled thereto and his reply brief virtually so concedes.

The crucial question in this appeal involves the application of the doctrine of estoppel against a public body in connection with bidding statutes for public work. Predicated upon the finding that upon discovery of the plaintiff's mistake after the contract was signed, the plaintiff proceeded with performance of the work in reliance upon the representation of the architect that defendants were favorably inclined toward correcting the contract price and upon completion of the work defendants ''would see to it that plaintiff suffered no loss as a result of said mistake,'' the trial court concluded as a matter of law that the defendant Board of Trustees was estopped from refusing to make payment to the plaintiff of an amount over and above the bid and contract price.

The only authority of a board of school trustees to let

818

contracts involving an expenditure for more than $1,000 is found in Education Code, section 18051, which provides: "The governing board of any school district shall let any contracts involving an expenditure of more than one thousand dollars ($1,000) for work to be done or for materials or supplies to be furnished, sold, or leased to the district, to the lowest responsible bidder who shall give such security as the board requires, or else reject all bids. . . ." Although the section does not specifically state that the contracts covered thereby shall be let to the lowest responsible bidder at the bid price, such a meaning is obvious, for otherwise the section would be meaningless. In the instant case there was no contention that the plaintiff submitted any bid other than the bid accepted by the Board of Trustees and which resulted in the contract between the parties. Having awarded the contract to the plaintiff at his bid price, any other contract, promise or agreement with the plaintiff to pay more than his bid and contract price would be in violation of section 18051 and hence in excess of the power of the Board of Trustees. Neither in said section nor elsewhere is there any statutory authority permitting the Board of Trustees to modify a contract which has been let in the event of the discovery of an error in the bid upon which the contract was awarded. ██ A board of school trustees is an administrative agency created by statute and invested only with the powers expressly conferred by the Legislature (*Grigsby* v. *King,* 202 Cal. 299, 304 [260 P. 789]) and cannot exceed the powers granted to them. (*Pasadena School Dist.* v. *Pasadena,* 166 Cal. 7, 11 [134 P. 985, Ann.Cas. 1915B 1039, 47 L.R.A.N.S. 892].) "When an individual enters into a contract he is a free agent and may determine for himself whether he will continue therewith or stand the damages for a breach thereof, or he may by agreement with the other party modify or abrogate the same. After a performance in full or in part he may pay the other party merely what he is entitled to, or may pay him more by way of extra compensation or as a gratuity. When, however, the state empowers an officer or board to enter into a contract on its behalf, whereby it is to have certain rights and liabilities, and the officer or board has entered into such contract, no officer or board may thereafter act or speak for the state in the matter of such contract, either for the enforcement or termination thereof, unless expressly or impliedly authorized by the state so to do. By the execution of such an authorized contract the state acquires certain legal rights and incurs certain lia-

bilities which are fixed and ascertained, or ascertainable. Thereafter no one can either increase or diminish the rights of the state or increase or reduce its liabilities thereunder unless he has been vested with authority so to do by express grant or clear implication." (*California Highway Com.* v. *Riley,* 192 Cal. 97, 107-108 [218 P. 579].) It is manifest, therefore, in the case at bar, that having complied with section 18051 and having awarded the contract to the plaintiff upon his bid price, the Board of Trustees would have been powerless to enter into a new and different contract with the plaintiff for the same work at an increased price. *A fortiori* the court was without authority to abrogate the bidding statute and make a new contract between the parties which the defendants were powerless to do. In other words, the court may not by the application of the doctrine of estoppel judicially create and enforce an illegal contract.

The application of the doctrine of estoppel to public bodies is well summarized in *County of San Diego* v. *California Water etc. Co.,* 30 Cal.2d 817, beginning at page 825 [186 P.2d 124, 175 A.L.R. 747]: "It is true that in some 'exceptional cases,' or situations where 'justice and right require it,' a governmental body may be bound by estoppel. (*Farrell* v. *County of Placer,* 23 Cal.2d 624, 627-628 [145 P.2d 570, 153 A.L.R. 323]; *City of Los Angeles* v. *Cohn,* 101 Cal. 373, 376-378 [35 P. 1002]; *Times Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547]; *McGee* v. *City of Los Angeles,* 6 Cal.2d 390, 394 [57 P.2d 925]; *City of Los Angeles* v. *County of Los Angeles,* 9 Cal.2d 624 [72 P.2d 138, 113 A.L.R. 370].) However, as a corollary of the general rule that contracts wholly beyond the powers of a municipality are void, the California decisions have held that estoppel to deny their invalidity may not be invoked against a governmental body and, further, that estoppel may not be invoked where the procedure specified in a statute, such as the mode of contracting, is the measure of the power to act. (*Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570], and cases there cited; see *Farrell* v. *County of Placer,* 23 Cal.2d 624, 630-631 [145 P.2d 570, 153 A.L.R. 323].) It is sometimes difficult to determine which of these rules is applicable in a particular case. It is clear, however, that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public. (See *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d

34, 140 A.L.R. 570], and cases cited therein; *Pan Amer. Co.* v. *United States*, 273 U.S. 456, 505-506 [47 S.Ct. 416, 71 L.Ed. 734]; *American Surety Co. of N.Y.* v. *United States* (C.C.A. 10th), 112 F.2d 903, 906.) In the American Surety Company case the court stated that the government could not be estopped so as to 'frustrate the purpose of its laws or thwart its public policy.' (112 F.2d at p. 906.) In 3 McQuillin, Municipal Corporations [2d ed., 1943], section 1266, it is said that various statutory procedures or steps exist to protect citizens and taxpayers from ill-considered contracts or those showing favoritism and that if recovery is allowed for property or services on the ground of estoppel or implied contract, 'then it follows as the night the day that the statute or charter provision can always be evaded and set at naught.' The author adds that the rule denying indirect enforcement of such void contracts harmonizes with our governmental system, appears to be supported by reason, and is not unjust, because the other party is charged with notice of the law.''

Here we are directly concerned with strong considerations of public policy. ''The competitive bidding requirement is founded upon a salutary public policy declared by the legislature to protect the taxpayers from fraud, corruption and carelessness on the part of public officials and the waste and dissipation of public funds.'' (*Miller* v. *McKinnon*, 20 Cal.2d 83, 88 [124 P.2d 34, 140 A.L.R. 570].) The Legislature, for the protection of the public, has limited the power of a board of school trustees to award a contract to the lowest responsible bidder. To hold that a subsequent promise by a board of trustees to pay more than the contract price may be enforced would result in a complete disregard of the salutary provisions of the bidding statute and would afford a method by which a board of trustees and persons dealing with them could evade the law. Application of estoppel under these circumstances would be tantamount to specific enforcement of a void promise and contrary to both the policy and letter of the law. '' [C]ontracts wholly beyond the power of a municipality are void. They cannot be ratified; no estoppel to deny their validity can be invoked against the municipality; and ordinarily no recovery in *quasi* contract can be had for work performed under them. It is also settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable.'' (*Los Angeles Dredging Co.* v. *City of Long Beach*, 210 Cal. 348,

353 [291 P. 839, 71 A.L.R. 161].) See also *Miller* v. *McKinnon, supra,* page 88; *Reams* v. *Cooley,* 171 Cal. 150 [152 P. 293, Ann.Cas. 1917A 1260] ; *Zottman* v. *San Francisco,* 20 Cal. 96 [81 Am.Dec. 96].

Plaintiff has assiduously reviewed the law of estoppel as applied against public or governmental bodies and frankly concedes that many of the earlier cases, which apply this doctrine to public bodies in much the same manner as to private individuals, have been overruled by *Miller* v. *McKinnon, supra,* 20 Cal.2d 83. No authority has been cited or found in which a public body has been held to be estopped from denying payment over and above the contract price under circumstances similar to those here shown. Plaintiff places great reliance upon *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7] and similar cases, which hold that a bidder on public works may be relieved by rescission from a mistake in bid where the public body has actual notice of such mistake before acceptance of the bid. In Kemper, the city had notice of the amount of the error before it attempted to accept the bid, whereas, in the case at bar, the most that can be said is that the Board of Trustees suspected an error in an unknown amount. Even assuming that plaintiff here may have rescinded his bid before acceptance, he waived that right by voluntarily entering into the contract and we can see no basis for transmuting a waived right into an obligation created by estoppel.

For the reasons stated, we conclude that the findings of fact do not support the conclusions of law that the defendants are estopped from refusing payment to plaintiff of $10,800 and that plaintiff is entitled to payment of said sum, and therefore the court erred in rendering judgment accordingly. A retrial of the issues of fact is unnecessary; hence the judgment is reversed, with directions to vacate the conclusions of law and judgment, to make new conclusions of law consistent with this opinion, and to enter judgment in favor of defendants with costs.

Fox, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 23, 1958. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.