Filed 6/25/14  Office Digital Solutaions Plus v. LA Unif. School Dist. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| OFFICE DIGITAL SOLUTIONS PLUS, INC., | B247339 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC481157) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rita Miller, Judge.  Affirmed.

Rutan & Tucker, Steven A. Nichols, Gerard M. Mooney, Eliot M. Houman for Plaintiff and Appellant.

Los Angeles Unified School District Office of the General Counsel, David Holmquist, Gregory L. McNair, Sung Yon Lee for Defendants and Respondents.

_____

Office Digital Solutions Plus, Inc. (ODSP) delivered new photocopy machines to a public school. Quickly realizing that (1) ODSP is not authorized to supply new copiers and (2) procurement procedures imposed by state law were ignored, the school district advised ODSP to "pick up your copiers from the school." ODSP refused to retrieve its property, then sued for damages on multiple theories, including inverse condemnation. The trial court granted summary judgment for the school district. We affirm.

## FACTS

In June 2011, a school principal in the Los Angeles Unified School District (LAUSD), Martin Sandoval, sought urgently needed photocopy machines for Miramonte Elementary School. At Sandoval's request, ODSP presented a proposal to supply copiers. Sandoval declared that ODSP owner Greg Prescott said that the company "could provide equipment, and that they were approved LAUSD vendors." Prescott denied that Sandoval asked whether ODSP was an approved LAUSD vendor.

Prescott met with Miramonte's Title I Coordinator, Guadalupe Castillo, who assured him that "she was responsible for getting the funding" for the copiers, and had funding approval. He added, "I felt confident that they had budget approval. She made [it] perfectly clear that she had money and she was responsible. That was all taken care of, didn't have to worry about it." Castillo told Prescott that the school was in a hurry to get the copiers. Castillo declared that she asked if ODSP was an approved vendor, and Prescott answered "yes." Prescott denied that any personnel at Miramonte asked if ODSP was an approved equipment vendor.

LAUSD maintains a list of approved vendors. ODSP was a vendor authorized to provide "maintenance services" for copiers over five years old.[1] When Principal Sandoval called ODSP to obtain a proposal, he failed to see "the fine print" stating that ODSP is "only a vendor for services, not for leases and purchases of the copy machines."

---

[1] Purchasing services manager Jorge Ballardo testified that LAUSD's master contract with ODSP for maintenance services expired on June 30, 2011, before the new copiers were delivered.

2

ODSP's proposal did not show that it is an approved lease/purchase provider. Sandoval felt that ODSP offered a good price of $27,500 per year for three years.

ODSP's Prescott testified that his company likes to get "an authorize[d] signature on the lease documentation which we bring once it's delivered. We like to do it after the fact . . . rather than before in case something changes." Castillo took delivery of ODSP's machines on July 12 and 19, 2011. When the last delivery was made, ODSP sales representative Tyler Garcia asked Castillo to have Principal Sandoval sign a document. Sandoval was in a meeting and did not read what he was signing. Sandoval was unaware that it was a lease prepared by ODSP: he thought it was from the LAUSD procurement department.

According to Jorge Ballardo, only LAUSD procurement department employees have authority to enter this type of lease agreement. Companies that already do business with LAUSD are aware of this, and other companies "should know how to do business with us." Nevertheless, Sandoval represented to Prescott that he and Castillo were authorized to lease equipment for LAUSD. The ODSP lease signed by Sandoval contains preprinted statements that any documents delivered in connection with the lease "have been duly authorized by you in accordance with all applicable laws, rules, ordinances and regulations"; that the signators "have the authority" to sign and "are acting with the full authorization of your governing body"; and that "you have complied fully with all applicable law governing open meetings, public bidding and appropriations required in connection with this Agreement."

Prescott believed that Principal Sandoval had "the authority, the proper signature" to approve the lease. Although Castillo signed a document entitled "Sales Contract" on July 5, 2011, the document was never signed by ODSP: Prescott testified that "I haven't signed it yet." On July 27, 2011, Castillo wrote a letter to ODSP "to confirm our acceptance of the Lease Terms."

Sandoval and Castillo were notified by LAUSD that ODSP is not authorized to provide copiers. Castillo promptly contacted ODSP, and on August 3, 2011, received an e-mail from ODSP employee Samantha Christiansen, stating, "if the purchase of the

3

machines is not approved there will be a 20% re-stocking fee of the price of each machine delivered. In addition, we will need to retrieve the current meters on each machine and every copy generated of each machine from the date of delivery will also be charged at $0.0049 per copy. [¶] Please update us ASAP on this status of this purchase approval."

On August 5, 2011, Sandoval drafted a memorandum to request after-the-fact approval of a lease with ODSP. However, LAUSD's procurement policies forbid after-the-fact purchase orders, and procurement requests for over $10,000 in supplies must be approved by the district superintendent. State law requires school districts to competitively bid contracts involving an expenditure of more than $78,900.[2]

In early August 2011, a buyer in the LAUSD procurement department, Brent Paul, telephoned Greg Prescott to advise him that Sandoval had no authority to bind LAUSD to the lease, and that the laws, rules and regulations governing LAUSD forbade Miramonte from purchasing goods or services without a purchase order approved by the LAUSD Board of Education. Paul reminded Prescott that ODSP was not authorized to lease copiers to LAUSD. He instructed Prescott to pick up the copiers from the school. Prescott replied that Sandoval held a position of authority at Miramonte and represented to ODSP that he had the authority to bind LAUSD to the lease. School staff had used the copiers and diminished their value. Prescott told Brent, "No way I'm going to pick them up. . . . You've accepted them. I wasn't going to touch them."

It is undisputed that on August 9, 2011, Brent Paul sent ODSP an e-mail stating (1) ODSP's master contract with LAUSD "only covers maintenance services on existing copiers more than 5 years old"; (2) ODSP could not deliver goods until it received a signed purchase order; (3) district employees cannot sign ODSP's contract documents; (4) ODSP should "pick-up your copiers from the school"; (5) LAUSD is not obligated to

---

**2**     The cost of ODSP's lease was $82,500.

pay vendors until a purchase order is issued; and (6) LAUSD will not sign off on a purchase order because ODSP is only authorized to service old copiers.

ODSP co-owner Jeff Eschelman testified that his company did not retrieve the copiers after receiving the e-mail because he believed that Guadalupe Castillo and Principal Sandoval were working to get the matter resolved so that ODSP could get paid. Castillo discouraged him from picking up the machines. Eschelman was expecting to receive the entire contract amount of $82,500. In their conversations, Castillo never mentioned that the purchase order was rejected. In a similar vein, Prescott declared that Principal Sandoval assured him at the end of August 2011 that Sandoval was working to resolve the leasing issue and asked for more time. Sandoval did not ask Prescott to retrieve the copiers from the school.

The LAUSD Board of Education did not approve or ratify a contract or purchase order authorizing ODSP to supply copier machines to Miramonte Elementary School. ODSP's Prescott testified that LAUSD purchasing manager Jorge Ballardo (or another) may have mentioned—or they may have discussed—"that schools are not authorized to sign contracts on behalf of the school district." Prescott felt that "It wouldn't matter either way."

Principal Sandoval stated that he telephoned Prescott in mid-August 2011, asking him to pick up the copiers, but "he refused," even though Sandoval offered to pay for the school's use of the machines. Prescott denies receiving this call from Sandoval. Sandoval telephoned ODSP in mid-October 2011 to explain that the company "should not have delivered copiers without an approved purchase order." Sandoval and Castillo denied telling anyone at ODSP that Sandoval had authority to sign contracts on behalf of LAUSD. ODSP co-owner Eschelman testified that Principal Sandoval never spoke to him about his authority to sign contracts.

School staff at Miramonte used the ODSP copiers for approximately three months, until machines arrived from an approved vendor. LAUSD procurement buyer Brent Paul had told Principal Sandoval to continue using the ODSP machines, then pay ODSP a restocking fee and for usage of the machines. Sandoval's supervisor was aware that

5

Miramonte was continuing to use the ODSP copiers. Purchasing manager Ballardo (Brent Paul's supervisor) testified that it was improper for the school to continue using the ODSP copiers. LAUSD admits that it knew ODSP expected compensation for the school's use of ODSP's copiers.

Miramonte staff ran over one million copies on the ODSP copiers, and obtained from ODSP toner cartridges and other supplies for the copiers. As a result of this usage, the copiers were worth approximately 15 percent of what ODSP paid to purchase them. ODSP received no compensation from LAUSD for its use of the copiers, save for $83.51 for copier supplies in September 2011.

In November 2011, Miramonte stopped using the ODSP copiers, encased them in shrink wrap and stored them in a restroom. In December 2011, Sandoval sent an e-mail to ODSP's co-owner Eschelman stating that "your company engaged in unacceptable and unauthorized procedures [and] was entirely aware that your company is only a service provider and [ ] not authorized to sell equipment to LAUSD schools. You delivered your machines to our school without a purchase order number, which is illegal. I signed a contract, believing that it was a form from our procurement office. You are fully aware that Principals do not have the authority to sign contracts for copiers. Your machines are no longer being used, as our machines have arrived." Sandoval reminded Eschelman that Brent Paul had previously instructed ODSP "to pick up your equipment." He added, "I do expect to pay a fair market price for the use of your machines."

Despite meeting with the LAUSD procurement department and Miramonte staff in October 2011, ODSP could not get LAUSD to compensate it for the copiers. ODSP never retrieved its copiers from Miramonte.

## PROCEDURAL HISTORY

ODSP filed a complaint in March 2012. Its amended pleading asserted causes of action for breach of contract; goods sold and delivered; unjust enrichment; promissory estoppel; fraud; and inverse condemnation. LAUSD answered. LAUSD sought summary judgment, and ODSP brought a cross-motion asking the trial court to summarily adjudicate the inverse condemnation claim.

6

Initially, the court summarily adjudicated plaintiff's first five causes of action, and dismissed Sandoval and Castillo as defendants. It denied the parties' cross-motions for summary adjudication of the inverse condemnation claim. One month later, the court decided the inverse condemnation claim in favor of LAUSD. On May 14, 2013, the court entered judgment in favor of LAUSD. ODSP appeals.

**DISCUSSION**

## 1. Appeal and Review

Summary judgment is granted if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A moving defendant must show the existence of a complete defense, or that one or more elements of the plaintiff's cause of action cannot be proven; the burden then shifts to the plaintiff to show a triable issue of material fact. (*Id.*, subd. (p)(2).) A judgment entered in favor of the defendant is appealable. (*Id.*, subd. (m)(1).) We review the record and the trial court's ruling de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) We strictly scrutinize the moving party's papers, construing the facts and resolving all doubts and ambiguities in the evidence in favor of the appellants. (*Innovative Business Partnerships, Inc. v. Inland Counties Regional Center, Inc.* (2011) 194 Cal.App.4th 623, 628; *Sellery v. Cressey* (1996) 48 Cal.App.4th 538, 543.)

Apart from relying on Code of Civil Procedure section 437c, ODSP also sought summary resolution of its inverse condemnation claim under Code of Civil Procedure section 1260.040, which permits the trial court to determine by motion liability issues in eminent domain and inverse condemnation actions. (*Dina v. People ex rel. Department of Transportation* (2007) 151 Cal.App.4th 1029, 1043.) A ruling made under the eminent domain statute is equivalent to a nonsuit. On appeal, we accept all facts and indulge all inferences in favor of plaintiff, disregarding conflicting evidence. (*Id.* at p. 1047.)

7

**2. Inverse Condemnation Claim**

    *a. Procedural Challenge*

ODSP contends that the trial court erred by denying summary adjudication of the inverse condemnation claim on April 16, 2013, then reconsidering its ruling and entering judgment for LAUSD on May 14, 2013. In fact, the court was not reconsidering its prior ruling under the summary judgment statute, Code of Civil Procedure section 437c; rather, its second ruling was made under the eminent domain statute, Code of Civil Procedure section 1260.040.

The court had *already found,* on April 16, that Supreme Court authority makes it "clear that there is no cause of action for inverse condemnation presented here." Between the court's initial ruling and its second ruling, both sides submitted additional written argument. ODSP had an opportunity to be heard, and, in any event, the court consistently decided in April and in May that this is not an inverse condemnation case. Though ODSP assails the trial court's change in reasoning, on appeal we review the court's ruling, not its rationale: its stated reasons are not binding on an appellate court. (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 681.)

    *b. Merits*

ODSP has an interest in the personal property it delivered to Miramonte. The school accepted ODSP's copiers and used them extensively, without compensating ODSP. The pleading states that the school's use of the copiers damaged and devalued ODSP's property and entitles it to compensation under the state and federal constitutions.

The government may not take private property for public use without just compensation. (U.S. Const., 5th Amend.) "Inverse condemnation" is a shorthand description for a proceeding instituted by a landowner whose property is taken without condemnation proceedings. (*Agins v. Tiburon* (1980) 447 U.S. 255, 258, fn. 2.) The permanent physical occupation of private property constitutes a taking. (*Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 421, 427.)

When the government leaves "its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." (*Cooke et al.*

*v. United States* (1875) 91 U.S. 389, 398.) "Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. [Citation.] Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights" under the Fifth Amendment. (*Hughes Communications Galaxy, Inc. v. U.S.* (Fed. Cir. 2001) 271 F.3d 1060, 1070.)

The government does not engage in "a sovereign act" when it denies a vendor's attempt to enter a government contract. (*Sun Oil Co. v. United States* (Ct.Cl. 1978) 572 F.2d 786, 817.) "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. [Citation.] In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." (*Id.* at p. 818.) For example, if the government interferes with a lease agreement, plaintiff's right to recover, if any, emanates from the lease, not the Fifth Amendment. (*Ibid.*; *Allain-Lebreton Co. v. Dept. of Army etc.* (5th Cir. 1982) 670 F.2d 43, 45; *Bldg. 11 Investors LLC v. City of Seattle* (W.D.Wash. 2012) 912 F.Supp.2d 972, 981-982.)

More to the point, "a property owner who voluntarily delivers property to the government pursuant to an agreement cannot later maintain an inverse condemnation claim if the government refuses to pay as agreed." (*Janowsky v. United States* (Cl.Ct. 1991) 23 Cl.Ct. 706, 711.) In *Janowsky*, a reviewing court found that Janowsky—who was on a hit list—may not have acted voluntarily because "the facts bespeak coercion"; namely, the FBI conditioned the safety of plaintiff's family to his relinquishing control of his business to the FBI. (*Janowsky v. U.S.* (Fed. Cir. 1998) 133 F.3d 888, 892. Accord: *Rose v. City of Coalinga* (1987) 190 Cal.App.3d 1627, 1631, 1636 [city may have obtained by duress consent to demolish plaintiffs' buildings days after an earthquake, after being told "that they had no alternative"].) ODSP does not show coercion or duress that would belie the voluntariness of its copier delivery. Following the delivery, ODSP was repeatedly told to pick up its property, and was not forced to leave it at Miramonte under duress.

In California, the Takings Clause is broader: compensation is required when private property is taken "or damaged" for public use. (Cal. Const., art. I, § 19.) "[A]n 'inverse condemnation' action may be pursued when the state or other public entity improperly has taken private property for public use without following the requisite condemnation procedures—as when the state . . . occupies land that it has not taken by eminent domain, or when the state takes other action that effectively circumvents the constitutional requirement that just compensation be paid before private property is taken for public use." (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 377.)

The words "or damaged" in the state constitution have *never* been interpreted to apply to "property damage incidentally caused by the actions of public employees in the pursuit of their public duties. On the contrary, such property damage, like any personal injury caused by the same type of public employee activity, has—throughout the entire history of section 19—been recoverable, if at all, under general tort principles." (*Customer Co. v. City of Sacramento*, *supra*, 10 Cal.4th at p. 378.) Adding the word "damaged" to the state's taking clause "was not intended to expand the scope of the constitutional compensation provision beyond the ambit of eminent domain and public improvements. It appears, instead, that the words 'or damaged' were added to clarify that the government was obligated to pay just compensation for property damaged in connection with the construction of public improvements, even if the government had not physically invaded the damaged property." (*Id*. at p. 379.)

Under federal and California law, the alleged breach of a lease by a public entity does not give rise to a takings claim. "Taking claims do not arise from a breach of contract." (*County of Ventura v. Channel Islands Marina, Inc.* (2008) 159 Cal.App.4th 615, 618.) "To say that a breach of contract or lease implicates the Fifth Amendment to the United States Constitution or article I, section 19 of the California Constitution, stretches the meaning of those provisions well beyond reason." (*Id.* at p. 625.)

ODSP relies on *City of Needles v. Griswold* (1992) 6 Cal.App.4th 1881, in which a city terminated a licensee's right to operate a golf course on city-owned property. When a restraining order gave the city the right to take "immediate exclusive control" over the

10

golf course, the city seized the licensee's personal property—golf carts, modular buildings, trucks, mowers, office machines—and refused to relinquish them because it needed them to operate the golf course. (*Id.* at pp. 1885-1887.) The city implicitly conceded that it seized plaintiff's personal property for a public use, and focused on what compensation had to be paid for the taking. The court wrote that when the city retook possession of its golf course, its appropriation of the licensee's personal property amounted to a taking. (*Id*. at p. 1888.)

The *City of Needles* case is distinguishable. LAUSD did not preemptively seize ODSP's personal property and refuse to surrender it. Rather, ODSP delivered its copiers to LAUSD. After LAUSD rejected ODSP's copiers and asked ODSP to reclaim them, ODSP declined to pick them up. Prescott admittedly told the LAUSD representative who instructed him by telephone to pick up the copiers, "No way I'm going to pick them up." ODSP then ignored a written memo from LAUSD to "pick up your copiers from the school."

It is clear that neither the federal or state Constitution Takings Clause applies to a vendor who voluntarily delivers personal property to the government, without a properly authorized contract in hand prior to delivery, then refuses to retrieve its property despite demands that it do so. ODSP insisted that LAUSD retain ODSP's property. There was no government "taking"; on the contrary, it was an unwarranted "receiving." The copiers were available for plaintiff's repossession; they were ultimately stored in a restroom because ODSP refused to arrange a pick-up of its own property. ODSP's expectation that it would be paid for LAUSD's use of the copiers does not transform this business dispute into an inverse condemnation case. The trial court's dismissal of this claim was proper.

## 3. **ODSP's Remaining Claims**

### a. *Law Governing Public Contracts*

California law governing public contracts has been in effect for over 150 years. A vendor who negotiates with a public agency is presumed to know the laws governing the agency's ability to contract. A contract that violates "stringent but wise" public contract laws cannot be the ground of any claim. The vendor acts at his peril if the contract turns

out to be in excess of the agency's power. He cannot recover any payment on the void contract. Though it seems a hardship to deny the vendor all compensation, he must ensure that the laws governing public contracts are complied with: failure to comply makes the vendor "a mere volunteer [who] suffers only what he ought to have anticipated. If [a] statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard." (*Zottman v. San Francisco* (1862) 20 Cal. 96, 104-106; *Miller v. McKinnon* (1942) 20 Cal.2d 83, 89; *Amelco Electric v. City of Thousand Oaks* (2002) 27 Cal.4th 228, 234-235.)

b. *Breach of Contract*

Public schools are agencies "created by statute and invested only with the powers expressly conferred by the Legislature." (*Paterson v. Board of Trustees* (1958) 157 Cal.App.2d 811, 818 (*Paterson*).) A school district may act only through a board of elected officials. If a school board has not approved or ratified a contract, it cannot be enforced. (*Santa Monica Unified Sch. Dist. v. Persh* (1970) 5 Cal.App.3d 945, 952; *Osborne v. Huntington Beach etc. School Dist.* (1970) 5 Cal.App.3d 510, 514.) While the power to contract may be delegated to a district superintendent, "*no contract made pursuant to the delegation and authorization shall be valid* or constitute an enforceable obligation against the district unless and *until the same shall have been approved or ratified by the governing board*, the approval or ratification to be evidenced by a motion of the board duly passed and adopted." (Ed. Code, § 17604, italics added.) Following the general rule for public contracts, "'persons dealing with a school district are chargeable with notice of limitations on its power to contract.'" (*El Camino Community College Dist. v. Superior Court* (1985) 173 Cal.App.3d 606, 613.)

Public contracts are subject to the competitive bidding statutes. (Pub. Contract Code, § 20111.) Specifically, photocopy machine suppliers are subject to public bidding requirements. (*Konica Business Machines U.S.A., Inc. v. Regents of University of California* (1988) 206 Cal.App.3d 449, 453-457.) Although a school board may delegate authority to purchase supplies and equipment, "*[n]o* rule shall authorize any officer or employee to make purchases involving an expenditure by the district in excess of the

amount specified by Section 20111 of the Public Contract Code." (Ed. Code, § 17605, italics added.)

In 2011, when the ODSP lease was signed, competitive bidding pursuant to Public Contract Code section 20111 was required for school district contracts in excess of $78,900.[3] The ODSP contract is for $82,500. Competitive bidding was required by law, and the Education Code did not permit LAUSD to authorize any employee to make the expenditure required by the ODSP contract. A photocopier vendor who fails to engage in the public bidding process cannot successfully claim that "it will be economically devastated should the contract be voided because it has incurred substantial expense in purchasing the copiers it has provided" to a public school. (*Konica Business Machines U.S.A., Inc. v. Regents of University of California*, *supra*, 206 Cal.App.3d at p. 458.) "[F]ailure to publicly bid contracts when required by statute renders them void so that the public entity may not reimburse a contracting party for service or materials the agency has been provided." (*Ibid.*)

Void contracts that exceed the powers of a school district cannot be ratified by promises from the school board to pay the vendor. (*Paterson*, *supra*, 157 Cal.App.2d at p. 820.) No evidence was presented that LAUSD solicited competitive bids from the public. No evidence was presented that the school board approved or ratified the ODSP contract, by a motion of the board duly passed and adopted. (Ed. Code, § 17604.) On the contrary, the LAUSD executive officer declared that no new copier contract from ODSP was ever approved by the school board. While ODSP argues that LAUSD never asserted contractual invalidity as a defense, the district's answer to the complaint states, "An unauthorized contract with a public agency is void" and cites the Supreme Court's public bidding opinions in *Amelco Electric v. City of Thousand Oaks* and *Zottman v. San Francisco.*

---

[3]     The parties agree on the bid threshold. The Department of Education website shows the bid threshold for contracts awarded by school districts in 2011: http://www.cde.ca.gov.fg/ac/co/bidthreshold2012.asp

ODSP asserts that the Miramonte staff had ostensible authority to sign the copier lease, authority it relied upon when it delivered the copiers to the school. The case law does not support the company's position. In the *El Camino Community College Dist.* case, a school district invited bids for payroll software. The successful bidder's proposal was signed by two vice presidents of the school district's board of trustees, but was not approved or ratified by the board of trustees. (173 Cal.App.3d at pp. 610-611.) When litigation arose, the court found that the school district could repudiate the agreement because the vendor "had constructive, if not actual, notice of the limitations on the officers' authority to bind the district to the terms of the agreements," owing to provisions in the Education Code. (*El Camino Community College Dist.*, at pp. 613-614.)

The reasoning in *El Camino Community College Dist.* applies here. Because it was dealing with a school district, ODSP had constructive notice that a school principal and a coordinator have no authority to bind LAUSD to a $82,500 copier lease without public bidding and without approval from the school board. The void copier contract cannot be ratified by promises from school employees to pay ODSP. (*Paterson*, *supra*, 157 Cal.App.2d at p. 820.)

ODSP argues that Principal Sandoval has actual authority to bind LAUSD to contracts and purchase orders up to $25,000. ODSP reasons that its contract is enforceable up to Sandoval's authorized $25,000 limit. "It shall be unlawful to split or separate into smaller work orders or projects any work, project, service, or purchase for the purposes of evading the provisions of this article requiring contracting after competitive bidding." (Pub. Contract Code, §§ 20116, 20657.) We decline ODSP's invitation to thwart the salutary purposes of the public bidding laws by effectively splitting the contract into three separate leases for $25,000 each, instead of a single contract for $82,500.

14

ODSP's reliance on Civil Code section 2333 is misplaced.**4**  Sandoval signed a contract for $82,500, without authorization.  There are no authorized acts to be separated out from unauthorized acts.

There is no triable issue of fact presented on ODSP's breach of contract claim.  No public bidding process occurred as required by the Public Contract Code, making ODSP's lease void and unenforceable.  LAUSD did not approve or ratify the lease as required by the Education Code.  ODSP could not rely on the ostensible authority of lower echelon school employees when the law plainly states that the school board must approve contracts of this size.  The laws are a matter of public record, and any vendor could discover the pertinent law with minimal research.  ODSP cannot blame school administrators for the company's own failure to research the laws before delivering equipment to a school without school board approval.

### c. *Promissory Estoppel*

ODSP maintains that estoppel may be applied against the government when fairness requires it.  The company contends that there are triable issues of material fact regarding any actual limitations upon the power of Miramonte staff to contract with it; the ostensible authority of Principal Sandoval and Coordinator Castillo; and ODSP's reliance upon their ostensible authority.

This Court has acknowledged that in exceptional cases, the government may be bound by estoppel when necessary to achieve justice and right.  (*Paterson*, *supra*, 157 Cal.App.2d at p. 819.)  "However, as a corollary of the general rule that contracts wholly beyond the powers of a municipality are void, [ ] estoppel to deny their invalidity may not be invoked against a government body and, further, estoppel may not be invoked where the procedure specified in a statute, such as the mode of contracting, is the measure of the power to act."  (*Ibid.*)  In *Santa Monica Unified Sch. Dist. v. Persh*, *supra*,

---

**4**     Civil Code section 2333 states that "When an agent exceeds his authority, his principal is bound by his authorized acts so far only as they can be plainly separated from those which are unauthorized."

15

5 Cal.App.3d at pages 953-954, the court found that estoppel is not available to a landowner who agreed to sell property to build a public school because the district's supervisor of building planning failed to obtain school board approval, though voiding the agreement caused the landowner to "undeniably" suffer hardship because "[h]e actually obligated himself on [ ] three promissory notes."

When the statutory scheme requires competitive bidding, as it does here, the strong public policies declared by the Legislature to protect the taxpayers from fraud, corruption, careless officials, and the waste of public funds cannot be overridden by the application of estoppel, which "would be tantamount to specific enforcement of a void promise and contrary to both the policy and letter of the law." (*Paterson*, *supra*, 157 Cal.App.2d at p. 820.)

As a result, "'neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316.) Competitive bidding statutes are enacted for the benefit of taxpayers, not for the benefit of bidders, and must be construed with sole reference to the public interest. (*Id.* at pp. 316-317; *Amelco Electric v. City of Thousand Oaks*, *supra,* 27 Cal.4th at p. 239.) As a vendor to a public agency, ODSP was charged with knowledge of the agency's procedures and the requirement of school board contract approval. As a matter of law, ODSP could not rely on the authority of school employees when the Education Code limits contracting power to an elected school board. LAUSD is not estopped from denying the validity of an invalid contract. (*Stratton v. City of Long Beach* (1961) 188 Cal.App.2d 761, 773.)

### d. *Unjust Enrichment/Goods Sold and Delivered*

Quantum meruit is an obligation created by law to address situations in which one person is accountable to another, "'otherwise he would unjustly benefit or the other would unjustly suffer loss.'" (*California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1136.) However, restitution

16

requires "'"'"no violation or frustration of law or opposition to public policy, either directly or indirectly.'"'"' (*Ibid*.; *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315.)

The analysis in the preceding sections applies equally to bar ODSP's claims for quantum meruit and for goods sold and delivered. Restitution would violate the express provisions of the Education Code and contradict public policy. For example, in *Reams v. Cooley* (1915) 171 Cal. 150, a school district failed to get competitive bids before making arrangements with a contractor to perform work on a high school. (*Id.* at p 151.) The Supreme Court held that the contractor did not have a valid contract and could not recover for the work on a quantum meruit or implied liability theory. (*Id*. at pp. 153-157.) The court observed that the law never *implies* an obligation when it *expressly forbids* a party from agreeing to the obligation. (*Id.* at p. 156.)[5] A party cannot recover in equity that which he is barred from recovering by contract, if it would subvert the purpose of state laws. (*Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1328.)

> e. <u>Fraud</u>

ODSP asserts a cause of action for fraud against Principal Sandoval and Title I Coordinator Castillo. It alleges that the two LAUSD employees entered the lease agreement "with the intention of deceiving Plaintiff into believing they had the authority to bind the District to such contracts." At the time, ODSP "was ignorant of the true facts and believed the representations" of Sandoval and Castillo. If ODSP had known the true facts it would not have delivered the copiers to Miramonte school.

Vendors are presumed to know the Education Code and Public Contract Code provisions that limit the actions of the agency and require school board approval of contracts. (*El Camino Community College Dist. v. Superior Court*, *supra*, 173 Cal.App.3d at p. 613; *Amelco Electric v. City of Thousand Oaks*, *supra*, 27 Cal.4th at pp. 234-235.) ODSP has done business with LAUSD in the past, as a copier maintenance

---

[5] The common counts are based on implied obligations. (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 793-794.)

17

company, so it should be familiar with the requirements for negotiating with a public school.  As a matter of law, ODSP could not reasonably rely on representations of school employees about their ability to bind LAUSD when state law belies the alleged representations:  vendors are charged with learning state law before they negotiate with schools.  The trial court properly granted summary judgment on ODSP's fraud claim.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.